UNITED STATES of America,
Appellee,

v.

Woodrow McKay SHOAF, Appellant.

Nos. 9102, 9336.

United States Court of Appeals
Fourth Circuit.

Argued April 28, 1964.

Decided Sept. 29, 1964.

Ronald P. Sokol, Charlottesville, Va. (court-assigned counsel), for appellant.

William H. Murdock, U. S. Atty. (Roy G. Hall, Jr., Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH and BRYAN, Circuit Judges, and HUTCHESON, District Judge.

HAYNSWORTH, Circuit Judge:

The question presented on this appeal is whether an indigent defendant seeking to collaterally attack two judgments imposed upon him for violation of federal statutes, has the right, either constitutionally or by statute, to a free transcript by simply alleging that "he believes he is entitled to the relief he will seek from the actual records; and that such request is made in good faith." The District Court denied his requests for transcripts, relying on our decision in United States v. Glass, 4 Cir., 317 F.2d 200.

Believing that we should scrutinize the Glass case in the light of the Supreme Court's recent decision in Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331, an outstandingly able attorney was appointed to represent petitioner here. After consideration of the Hardy case and preceding Supreme Court cases, in the light of the comprehensive briefs and oral argument, we affirm the District Court.

On April 24, 1962, petitioner, Woodrow McKay Shoaf, was convicted of a violation of the Dyer Act [1] and sentenced to five years in prison, the sentence which he is now serving. A second jury trial was commenced on April 25 and resulted in petitioner's conviction of a violation of the conspiracy statute, 18 U.S.C.A. § 371, and of substantive Dyer Act offenses. On the second conviction, he received a 3-year sentence to run consecutively with the prior 5-year sentence.

During the two trials, Shoaf was represented by retained counsel. Appeals were undertaken from both convictions, and Shoaf was released, pending the appeals upon bail of $25,000, which he posted. Before the appeals were perfected, however, Shoaf abandoned them and surrendered himself for the service of the sentences.

After being in prison almost a year, Shoaf filed a petition seeking a copy of the transcript of the trial which resulted in the first conviction. He alleged that he was a pauper, that "he believes he is

entitled to the relief he will seek from the actual records; and that such request is made in good faith." He does not now seek release from prison, and his petition contains no intimation of what ground he supposes he may have for collateral attack upon his conviction.

The District Court promptly entered an order denying the petition upon the ground that it was without authority, under the circumstances, to furnish Shoaf with a transcript at Government expense.

Shoaf later filed a similar petition seeking a transcript of the second trial. This petition was denied for the same reason as the first. Meanwhile, however, the District Court entered an order permitting Shoaf to appeal in forma pauperis from a denial of his petition for a transcript in the first case. Included in that order was a direction that he be furnished with a transcript of the hearing. The Court intended that he be furnished only with a transcript of the brief hearing on the petition for a transcript of the first case, but the reporter prepared and filed with the records of this case a transcript of the criminal trial, itself. Apparently, this has not yet been made available to Shoaf.

Only last year we held that a similar petition was properly denied. United States v. Glass, 4 Cir., 317 F.2d 200. We there said:

"With respect to the request for a transcript we wish to make it clear that on the record now before us we are not persuaded that Glass is entitled to a transcript at government expense, for he has shown no need for one. It is not contended, and if it were we could not uphold the contention, that an indigent may obtain a free transcript 'merely for his examination in order to determine whether he wishes to engage in litigation.' An indigent is not entitled to a transcript at government expense without a showing of the need, merely to comb the record in the

hope of discovering some flaw. On the other hand, we do not accept the proposition that a district court can never furnish an indigent a transcript for the purpose of instituting a collateral attack on a criminal proceeding, where he has stated a proper ground for relief and a transcript is indispensable. However, as no need for a transcript has been shown here, we find it unnecessary to delineate the circumstances in which a court may exercise this power under 28 U.S.C.A. § 753(f)."

We have re-examined our position in the light of Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, and we adhere to it.

Since Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891, was decided, its salutary principle has been expanded to remove the vestiges of disadvantage under which indigents seeking appellate review of their convictions have labored in the past. The principle of Griffin has been held to apply to collateral proceedings as well as to direct appeals,[2] and a trial judge's determination of an indigent's appeal as frivolous cannot be substituted for appellate examination of a record sufficiently complete to enable the appellate court to draw its own conclusions as to the merits of the appeal.[3]

In Griffin, itself, and in the subsequent cases in the Supreme Court extending its principle, it is either implicit or explicit in the opinions of the Court that the right to a transcript at government expense arises only in response to need of it. As the dissenters observed in Draper v. State of Washington, 372 U.S. 487, 500, 83 S.Ct. 774, 781, 9 L.Ed.2d 899, the Court "carefully avoids requiring the State to supply an indigent with a stenographic transcript of proceedings in every case." In Eskridge v. Washington State Board of Prison Terms, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269,

a holding that a transcript must be furnished to every indigent seeking review of his conviction was expressly disowned, while in Burns v. State of Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209, there was an expression of approval of the Illinois response to the Griffin decision. After the Griffin decision, the Illinois Legislature adopted a statute providing for the furnishing of transcripts on appeals by indigents if the transcript is "necessary to present fully the errors recited in the petition."

It was with these cases before him that Judge Sobeloff wrote for this Court in Glass. They clearly point to the result we reached there.

Since then Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, has been decided. It was there held that when counsel in a direct appeal comes into a case for the first time after a trial is over and seeks to make a showing of a nonfrivolous ground of appeal, he must be furnished with a transcript of the trial in aid of his effort.

Hardy was decided on the basis of the Court's construction of federal statutes, not on constitutional grounds. It does hold that a federal indigent prisoner seeking appellate review of his conviction is entitled to a free transcript without a prior showing of specific need for it when he can show a general need for it arising out of his appellate counsel's lack of familiarity with what transpired at the trial. This case differs from Hardy, of course, for here we are concerned with the indigent's rights in collateral proceedings, not in direct appeals, and the transcript is sought by the indigent for his own perusal rather than that of newly appointed counsel. Those differences require a different result.

In a direct appeal, when many questions not cognizable in collateral proceedings are reviewable, a full transcript of the trial would be the basic starting point for any lawyer undertaking to han-

2. Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39.

3. Draper v. State of Washington, 372 U.S. 487, 83 S.Ct. 774; Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L. Ed.2d 21.

dle the appeal if he had not participated in the trial. Whether or not his client felt any specific need for a transcript or was able to point out in advance trial error meriting appellate review, all lawyers would recognize the attorney's need for a transcript.

In collateral proceedings, however, most of the trial errors warranting attention in direct appeals are not reviewable. Unless there had been such essential unfairness as to constitute a deprivation of a constitutionally protected right, the right to review trial errors is lost when a direct appeal is voluntarily foregone. Moreover, there is no reason to suppose that Shoaf, if furnished a copy of the transcript of his trial, could recognize as trial error what neither he nor his trial counsel thought prejudicially erroneous at the time of trial.

The usual grounds for successful collateral attacks upon convictions arise out of occurrences outside of the courtroom or of events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by reading a transcript. He may well have a need of a transcript or a partial transcript to support some ground of collateral attack, but rarely, if ever, would the defendant, himself, need a transcript of the trial to become aware of the events or occurrences which constitute a ground for collateral attack.

These differences we think are crucial. Hardy's response to the general need for the transcript was not an abandonment of the Supreme Court's repeated refusal to hold that a transcript must be furnished every indigent who seeks direct or collateral review of his conviction. Shoaf, who has undertaken to show neither specific nor general need for a transcript, would be entitled to one at government expense only if that is a requirement in every case. The Supreme

Court has not gone so far and we are not prepared to do it. We thus reaffirm our earlier holding in Glass.

Shoaf not only contends that denial of the transcript here was a denial to him of due process under the Fifth Amendment; he claims also that he has an absolute right to a transcript under the Court Reporter Act.[4] That section provides for payment by the United States "for transcripts furnished in criminal or habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis."

On August 3, 1964, the Comptroller General of the United States ruled that this section did not authorize payment for a transcript of his original trial for use by an indigent federal prisoner or his attorney in collateral proceedings brought under 28 U.S.C.A. § 2255.[5]

■■■■ This seems an unnecessarily narrow construction of the statute. A proceeding under § 2255 is only a procedural substitute for habeas corpus, of parallel dimension, provided only for the purpose of requiring that the application be to the sentencing court rather than to the court of the district in which the prisoner is confined. Substantively, it is the equivalent of habeas corpus. It ought to be treated as a "criminal or habeas corpus proceeding" within the meaning of the Court Reporter Act.

Such a narrowly literal construction of the statute creates grave constitutional questions. If the Fourteenth Amendment requires a state to furnish a free transcript of his trial to an indigent state prisoner seeking collateral relief in the state courts, if need of it appears,[6] surely the Fifth Amendment requires as much of the United States with respect to federal prisoners seeking collateral relief under § 2255. There is no equal protection clause in the Fifth Amendment, but under the due process clause the

4. 28 U.S.C.A. § 753(f).

5. On August 18, 1964, he also ruled that Federal funds may not be used to provide state prisoners seeking habeas corpus in federal courts with transcripts of their state court trials.

6. Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39.

minimal standards of justice ought not to be appreciably lower in the federal courts than the Federal Constitution requires in state courts.

The situation demands the attention of the Congress, in which a clarifying bill is now pending. It would not be a happy answer to leave the courts in a position in which they might feel compelled by the Constitution to order the release of many prisoners upon the ground that the United States does not afford them procedural due process.

■ If the Comptroller General's construction of § 753(f) may be too narrow, Shoaf's is certainly too broad. There is nothing in the statute which suggests that transcripts are to be furnished at the expense of the United States regardless of apparent need. The purpose of the statute was to provide the means by which indigents might have the full and fair hearings, to which they are entitled, not to squander public monies upon the production of transcripts as to which no one has more than an idle curiosity. Furnishing a transcript, or a portion of it, ought to be responsive to the appearance of need for it, but the statute does not require more.

■ While we conclude that Shoaf has not shown that he is now entitled to the transcripts he sought, it may be appropriate to suggest consideration of the use of devices similar to those employed in the Northern District of Illinois. See Report of Committee on Habeas Corpus, 33 F.R.D. 367, 382. Some of the Districts of this Circuit have been using such devices in modified form adapted to their own particular needs. While it may be that the District Court has no power to require the use of a prescribed form of petition, or to refuse to act upon a petition disclosing some ground for a hearing because other portions of the prescribed form had not been completed, most prisoners will readily comply, and the answers elicited may show grounds for relief the significance of which the prisoners are unaware. Use of such procedures certainly will facilitate recognition by the court of a ground of attack of which the prisoner is aware but which he earlier had not expressed, or had expressed so poorly that it was not readily apparent. The result should tend to avoid waste of time and fruitless proceedings, both in the District Courts and in the Courts of Appeals.

Here, if Shoaf had been asked to complete such a petition or questionnaire, he would have been afforded a much earlier opportunity to show any possible need he might have for a transcript of the trial proceedings. The result might have been disclosure that he had some ground for collateral attack unrelated to what transpired at the trial, and that he wanted the transcript only because he thought there was some procedural requirement of it. It might appear that he had some ground for collateral attack which involved need for only a portion of the transcript. It might have shown that he has no possible ground for collateral attack. In any event, his collateral attack upon his conviction would have moved much more swiftly through the courts and would have come to an earlier final conclusion.

District Judges are closer to the scene than we and can better determine what is appropriate for their own use. We only intend to suggest some consideration of the Illinois procedure, modified to fit local conditions, and to state our impression that some Districts in this Circuit are finding its use advantageous.

As it is, we affirm the orders of the District Court, but our affirmance, of course, is without prejudice to the filing of a petition for collateral relief under 28 U.S.C.A. § 2255. If such a petition should show some nonfrivolous ground, he may incidentally ask for a copy of the transcript, and it, or the relevant portion, should be supplied to him if need for it is shown. If it cannot be furnished despite apparent need, because of the unavailability of funds under the ruling of the Comptroller General, then there would arise a question of the legality of his further detention. That question is not before us, for, as yet, there has been no showing of need for the transcript.

Affirmed.