[Civ. No. 36899. Second Dist., Div. Five. July 22, 1970.]

JOHN R. MILLER, Plaintiff and Appellant, v.
ROBERT L. HAMM, as Clerk, etc., Defendant and Respondent.

## COUNSEL

Gilbert F. Nelson, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Laurence M. Sarnoff, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**AISO, J.**—Petitioner John R. Miller appeals from an order denying his "application for writ of mandamus . . . for an order directing the clerk of Ventura County . . . to make a certified copy of the proceedings, Preliminary Hearing and Superior Court Trial, in case No. #5739" and to forward same to petitioner at the Soledad Training Facility, Soledad, California, "in order to assist him in the preparation of a meaningful petition for a writ of habeas corpus."

Pursuant to petitioner's request we have caused the trial court files to be lodged with the clerk of this court (Cal. Rules of Court, rule 12(a)), and have taken judicial notice of the documents filed therein. We conclude that under the circumstances of this case, the order denying the petition for writ of mandate should be affirmed for the reasons which we set forth below.

### I.

Petitioner and his codefendant Waldron were charged by an information filed on September 7, 1965, under Superior Court of Ventura County No. CR 5739, with having committed the following felonies on or about August 1, 1965: (count I) robbery of Robert Fuller (Pen. Code, § 211), (count II) robbery of Betty Estes (Pen. Code, § 211), (count III) assault with a deadly weapon upon Leon Marvin Lowe (Pen. Code, § 245), and (count IV) burglary of Barnes Trading Post (Pen. Code, § 459).

At petitioner's request for court appointment of counsel, attorney George Dyer, Jr., was appointed on the date of arraignment. Attorney Dyer thereafter represented petitioner at all times until and including the pronouncement of judgment against him.

On November 2, 1965, the trial court dismissed count IV (burglary) upon the district attorney's motion, and the case went to trial before a jury on the first three counts. On November 16, 1965, the jury found petitioner and his codefendant Waldron guilty on each of those three counts.

On December 15, 1965, counsel for both defendants moved for a new trial. After having first denied the motions, the trial court vacated its ruling and continued the motion to December 28, [*sic*] 1965, to enable counsel to file written points and authorities and for oral argument on the continued date. On December 23, 1965, petitioner's motion for a new trial was withdrawn, his request for probation denied, and he was sentenced to concurrent sentences in the state prison. Petitioner *did not appeal* from this judgment.

On February 19, 1969, almost three years and two months later, petitioner filed a written motion for an order to the clerk of the court to prepare "records and transcripts" to enable him to prosecute a writ of habeas corpus. The motion specified no particular record or transcript. Petitioner cited case authority in support of his motion, but he did not mention *Gardner* v. *California* (1969) 393 U.S. 367 [21 L.Ed.2d 601, 89 S.Ct. 580] decided on January 20, 1969, about a month prior to petitioner's filing his written motion. The trial court denied the motion on February 19, 1969, citing *People* v. *Sparks* (1952) 112 Cal.App.2d 120 [246 P.2d 64], cert. denied 345 U.S. 959 [97 L.Ed. 1379, 73 S.Ct. 944], wherein the appellate court affirmed a denial of a motion for clerk's and reporter's transcripts of trial proceedings in order to prosecute a writ of error *coram nobis*. In *Sparks,* as in this case, the defendant had failed to appeal from the judgment against him, and at the time of his motion for transcripts no *coram nobis* proceedings had been filed. Petitioner herein made no attempt to obtain an appellate review of this adverse ruling of February 19, 1969, either by way of appeal[1] or by a writ proceeding in an appellate court.

On October 9, 1969, petitioner filed this request for the reporters' transcripts in the form of an "Application for a Writ of Mandamus," now citing the *Gardner* case as one of his authorities in support of his petition. The court below denied the writ on the date on which it was filed, noting that in

[1]Whether the order was appealable as a post-judgment order affecting petitioner's substantial rights was not free from doubt. " 'Substantial rights' under subsection three of section 1237 [Pen. Code] are not affected when defendant's objections concern matters that could have been reviewed on timely appeal from the judgment." (*People* v. *Howerton* (1953) 40 Cal.2d 217, 220 [253 P.2d 8].)

its opinion the *Gardner* case did not overrule *People* v. *Sparks, supra,*[2] on the basis of which it had previously denied petitioner's motion for the transcripts.

On December 2, 1969, petitioner filed his notice of appeal from the foregoing order of denial of October 9, 1969. This was timely notice for a civil proceeding. (Cal. Rules of Court, rule 2(a).)

To his opening brief, petitioner's appellate counsel has attached as Exhibits A and B, a declaration by the petitioner and his specification of portions of the trial court files to which he directs the attention of the court. Petitioner's declaration asks them to be "deemed incorporated as a part of [his] Petition For Writ of Mandate."

## II.

The record in this case raised a threshold inquiry whether we, in fact, have an appeal from a mandamus proceeding, which is a collateral but independent civil proceeding even though it arises out of the criminal action. It appears from the record that the *pro se* petition (application) was inadvertently misfiled in the criminal action, petitioner apparently having placed the criminal action number CR 5739 on his petition. The superior court clerk's transcript was entitled, "The People of the State of California, Plaintiff, vs. John Richard Miller, Defendant" and was filed as a criminal appeal under No. 2d Crim. 17532 in this court. Having ascertained, in course of our preparations for oral argument, from the title and labelling of the petition, the label preceding the court's minute order of October 9, 1969, the notice of appeal, and the briefs of appellate counsel, that we do have an appeal from a proceeding in mandamus, we ordered the record and briefs refiled under a civil appeal number.

Had the original misfiling not occurred, the superior court probably would have denied the petition on grounds free of constitutional overtones in deference to the teaching of such cases as *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65-66 [195 P.2d 1], thereby limiting this appeal to nonconstitutional issues. The court below probably would have noted, we think, and we note, that the petition is directed against the clerk of the court and not to the court itself.[3] The clerk being a ministerial officer without judi-

---

[2]For federal cases in accord with *Sparks,* see: *Ketcherside* v. *United States* (6th Cir. 1963) 317 F.2d 807; *Dorsey* v. *United States* (6th Cir. 1964) 333 F.2d 1015, cert. denied 379 U.S. 994 [13 L.Ed.2d 613, 85 S.Ct. 711].

[3]A proceeding can be filed in the superior court against the clerk of that court (*Brown* v. *Superior Court* (1925) 70 Cal.App. 732, 736-737 [234 P. 409]), but not against the court itself (*Haldane* v. *Superior Court* (1963) 221 Cal.App.2d 483, 485-486 [34 Cal.Rptr. 572]; *Legg* v. *Superior Court* (1958) 156 Cal.App.2d 723, 725 [320 P.2d 227]).

cial powers (*Rose* v. *Lelande* (1912) 20 Cal.App. 502, 503 [129 P. 599]), the substantive issue involved is narrower than that raised in the motion of February 19, 1969. The earlier motion addressed to the court requested action upon its part and therefore it invoked, inter alia, the exercise of a judicial discretion in its disposition. ■ In contradistinction in this mandate proceeding against the clerk, the pivotal issue is the duty of the clerk. Substantively, therefore, the petition and its supporting authorities would have to establish a clear and present *ministerial duty* on the part of the clerk to comply with petitioner's request for the reporters' transcripts. (See, *e.g., Baldwin-Lima-Hamilton Corp.* v. *Superior Court* (1962) 208 Cal.App.2d 803, 813-814 [25 Cal.Rptr. 798]; cf. *Wenzler* v. *Municipal Court* (1965) 235 Cal.App.2d 128, 131-132 [45 Cal.Rptr. 54].) Procedurally, the petition raised questions whether petitioner had properly named and joined the proper party respondent and the necessary real party in interest,[4] whether prior demand and refusal[5] or excuse thereof had been alleged, and whether proper service of the necessary papers had been made on respondent and real party in interest.[6] However, the trial court treated the petition in effect as a motion and petitioner's appellate counsel and the Attorney General have treated the appeal as one reaching the question of whether petitioner has a constitutional right to the requested free transcripts under the circumstances of this case. We do likewise in the interest of judicial economy and to provide guidance to the superior court if petitioner should file a new petition free of the technical shortcomings which occurred in this case.

### III.

In *Wade* v. *Wilson* (1970) 396 U.S. 282 [24 L.Ed.2d 470, 90 S.Ct. 501], the question was raised whether a convicted felon, who makes no claim of innocence of the crime for which he was convicted, is constitutionally entitled to a free reporter's transcript years after his conviction was affirmed on appeal, for the purpose of enabling him to generally search the record for possible errors which might be asserted in a post-judgment col-

---

[4]The proper practice would be to name the incumbent clerk by name. (See Cal. Civil Writs [Cont.Ed.Bar 1970] [hereinafter cited as "Cal. Civil Writs"], § 11.8, p. 319.) The People as one having an interest in the outcome of the proceedings should be named as a real party in interest. (See Cal. Civil Writs, *supra,* § 10.18, pp. 194-195.)

[5]Normally a prior demand upon the clerk and his refusal must be shown. (*Brown* v. *Superior Court* (1925) *supra,* 70 Cal.App. 732, 736-737.) Anticipated refusal of demand is normally not sufficient. (See Cal. Civil Writs, *supra,* § 5.23, p. 77, and cases cited.)

[6]Unless excused by local superior court rules or practice, a copy of the petition and supporting papers should be served on the respondent and real party in interest prior to the filing of the petition, or prior service excused by order. (Code Civ. Proc., § 1107; and see Cal. Civil Writs, *supra,* §§ 11.2 to 11.10, pp. 314-321.)

lateral proceeding. The court stated that the question was one of first impression before that court, but that it was unnecessary to decide it in that particular case. Thus, we have no United States Supreme Court decision dispositive of the constitutional issue raised in this case. We deem it unnecessary, therefore, to distinguish the pre-*Wade* cases cited by petitioner as not controlling in this case.

In the instant case, petitioner made no effort to take advantage of a direct appeal from his judgment of conviction in which he could have obtained an appellate review of the questions he belatedly seeks to raise in this court by appendices A and B,[7] appended to his counsel's opening brief. ■ His failure to appeal gives rise to a presumption that he was validly convicted. (Cf. *People* v. *Chavez* (1966) 243 Cal.App.2d 761, 767 [52 Cal.Rptr. 633].) Had petitioner felt aggrieved at the time he was first sentenced to prison, he could have appealed with no cost and no hazard to himself. Upon such an appeal, a free reporter's transcript of the trial would have been prepared and furnished to him. (Cal. Rules of Court, rules 33(a) and 35(b); *People* v. *Smith* (1949) 34 Cal.2d 449, 453 [211 P.2d 561]; *In re Henderson* (1964) 61 Cal.2d 541, 542 [39 Cal.Rptr. 373, 393 P.2d 685].) An attorney to prosecute his appeal would have been appointed for him at no expense to him. (*Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814].)

There was no hazard here against taking an appeal as was the situation presented in *Fay* v. *Noia* (1963) 372 U.S. 391 [9 L.Ed.2d 837, 83 S.Ct. 822] where the defendant had been advised by his counsel that a successful appeal followed by a retrial might result in a death penalty instead of the life imprisonment which had been imposed upon him at the conclusion of his first trial. ■ In California, the principle is well established that if a defendant is convicted upon a retrial for the same crime or crimes for which he was convicted upon a previous trial, the punishment for such crime or crimes may not be increased upon the retrial. (*People* v. *Henderson* (1963) 60 Cal.2d 482, 495-497 [35 Cal.Rptr. 77, 386 P.2d 677] (life sentence imposed at first trial cannot be increased to a death penalty upon retrial); *People* v. *Ali* (1967) 66 Cal.2d 277, 281-282 [57 Cal.Rptr. 348, 424 P.2d 932] (concurrent sentences imposed at first trial cannot be made consecutive upon retrial); *In re Ferguson* (1965) 233 Cal.App.2d 79, 80-81 [43 Cal.Rptr. 325] (county jail sentence for statutory rape imposed at first trial cannot be increased to a state penitentiary sentence upon retrial); see, also, *People* v. *Hood* (1969) 1 Cal.3d 444, 459 [82 Cal.Rptr. 618, 462 P.2d 370]; Witkin, Cal. Crimes (1969 Supp.) § 202A, pp. 70-72.) Any time in prison that a sentenced prisoner serves pending an appeal is credited

[7]These will be considered below.

to any subsequent commitment for the same criminal act or acts. (Pen. Code, § 2900.1.)

■ The petition is completely silent as to why petitioner did not appeal from the judgment of conviction, why he waited for three years and two months before asking for the transcripts, and why he sought no appellate review of the previous order denying his motion for the transcripts. Society's overriding interest in the orderly administration of criminal justice and in the finality of criminal proceedings requires at least a minimum explanation why he procrastinated as long as he did. The period was sufficiently long so that prosecution witnesses might have become unavailable in the event of a retrial.

Petitioner's appellate counsel argues that perhaps the retroactive application of a United States Supreme Court decision rendered after his judgment became final might give him reason to belatedly question his trial procedure. The frank acknowledgment, albeit impliedly, of the retroactive repercussions which some appellate court decisions may have upon the administration of criminal justice is refreshing, but even so the petition should specifically state which decision the petitioner seeks to invoke so that the asserted necessity for the transcripts can be assessed. ■ Specificity and particularity are required even on direct appeal when one seeks a reporter's transcript which is not a part of the normal record on appeal. (*People* v. *Hill* (1967) 67 Cal.2d 105, 124-125 [60 Cal.Rptr. 234, 429 P.2d 586], cert. denied 389 U.S. 1009 [19 L.Ed.2d 607, 88 S.Ct. 572].) Petitioner belatedly seeks to raise some specific points by his appendices A and B attached to his counsel's opening brief. They were not presented to the trial court and hence are not properly a part of the record on appeal. (*People* v. *Sakelaris* (1957) 151 Cal.App.2d 758 [312 P.2d 263]; *Green* v. *Green* (1963) 215 Cal.App.2d 31, 36 [30 Cal.Rptr. 30]; cf. *People* v. *St. Martin* (1970) 1 Cal.3d 524, 537-538 [83 Cal.Rptr. 166, 463 P.2d 390]; *LeFont* v. *Rankin* (1959) 167 Cal.App.2d 433, 436-437 [334 P.2d 608].) Even if they had been presented to the trial court they could not have influenced the decision of the court below for they lack merit for the reasons which we shall discuss below.

■ In considering petitioner's request it must be borne in mind that the contentions of error which can be advanced upon a collateral review are more limited in scope than those which one can urge upon a direct appeal. ■ As a general rule habeas corpus proceedings cannot serve as a substitute for an appeal. Absent special circumstances excusing one's failure to pursue remedies afforded by an appeal, the writ will not lie to review belatedly claimed errors which could have been urged upon a direct appeal. (*In re Lopez* (1970) 2 Cal.3d 141, 151 [84 Cal.Rptr. 361, 465 P.2d 257];

*In re Black* (1967) 66 Cal.2d 881, 886-887 [59 Cal.Rptr. 429, 428 P.2d 293]; *In re Streeter* (1967) 66 Cal.2d 47, 52 [56 Cal.Rptr. 824, 423 P.2d 976].) ▮ An accused's failure to avail himself of the remedies of trial and appeal to have his federal constitutional rights vindicated ordinarily constitutes such a deliberate bypassing of orderly state procedures as to justify denial of relief by way of state and federal collateral proceedings. (*People* v. *Jackson* (1967) 67 Cal.2d 96, 99 [60 Cal.Rptr. 248, 429 P.2d 600].)

In particular, our Supreme Court has held that any claimed violation of one's rights under the Fourth Amendment pertaining to guarantees against unreasonable searches and seizures must be raised upon direct appeal and that reexamination of such questions is not open by way of post-judgment habeas corpus proceedings. (*In re Sterling* (1965) 63 Cal.2d 486, 487-488 [47 Cal.Rptr. 205, 407 P.2d 5]; *In re Lessard* (1965) 62 Cal.2d 497, 503-504 [42 Cal.Rptr. 583, 399 P.2d 39], cert. denied 372 U.S. 955 [9 L.Ed.2d 979, 83 S.Ct. 954].) ▮ "A failure to object to the introduction of evidence which defendant alleges was illegally obtained precludes the successful presentation of the issue at the appellate level. [Citation.] ▮ Even if defendant did urge an objection at the trial level and the court allowed the evidence to be introduced, defendant cannot neglect his appeal and seize upon habeas corpus as an alternate remedy." (*In re Lessard, supra,* at p. 503.)

We are mindful of *Kaufman* v. *United States* (1969) 394 U.S. 217 [22 L.Ed.2d 227, 89 S.Ct. 1068], but we do not think that its reach is sufficient to nullify our Supreme Court decisions cited above. (*Ker* v. *California* (1963) 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623].)

All of the questions which petitioner seems to have in mind in his Exhibits A and B and which pertain to the admissibility of evidence or the court's rulings thereon would therefore appear to be foreclosed. ▮ While we treat here only the question of whether petitioner is entitled to obtain reporters' transcripts to seek grounds for a collateral review by way of habeas corpus, still the differences between direct appeal and collateral review cannot be ignored in determining the question before us. (*United States* v. *Shoaf* (4th Cir. 1964) 341 F.2d 832, 835.)

Presumably a copy of the reporter's transcript of the preliminary hearing was given to petitioner or his counsel at time of arraignment. We find no motion to set aside the information under section 995 of the Penal Code in the trial court files. "In the absence of a motion to set aside the information, any invalidity in the proceedings before commitment was waived. (Pen. Code, §§ 995, 996; *People* v. *Elliot,* 54 Cal.2d 498, 503-505 [6 Cal.Rptr. 753, 354 P.2d 225]; *In re Tedford,* 31 Cal.2d 693, 694 [192

P.2d 3].)" *(In re Grayson* (1966) 242 Cal.App.2d 110, 113 [51 Cal.Rptr. 145].) Why another reporter's transcript of the preliminary examination would be helpful under these circumstances is not stated by petitioner.

Exhibit A intimates that because petitioner had escaped from Camarillo State Mental Hospital just two days before the robberies, and no issue as to his sanity was raised at trial, that error occurred. The probation report reflects that petitioner had been committed to the hospital by the Youth Authority for observation because of his claims of hallucination and because of his attempts to mutilate himself. However, the probation report also quotes from hospital reports, the tenor of which was that while petitioner had a "[p]ersonality pattern disturbance, schizoid personality" there was no evidence of hallucinations and in the opinion of the hospital psychiatrists he was not mentally ill. In contrast, the court held a sanity hearing (Pen. Code, § 1368) as to petitioner's codefendant Waldron who escaped from the hospital together with petitioner. ▮ Certain reports concerning Waldron's mental problems were admitted into evidence for the jury's consideration. That some such evidence was also offered on behalf of petitioner is intimated by the jury instruction, which petitioner seeks to challenge. Under this state of the evidence, the giving of a modified form of CALJIC No. 73-B[8] was not improper, particularly when accompanied by CALJIC Nos. 93 and 8.[9]

The court, aware of the fact that both petitioner and his codefendant Waldron were inmates of the mental hospital and had fled together, and

[8]The instruction in question reads: "A person may be legally sane, as we define that term in dealing with the question of criminal responsibility, and yet be in an abnormal mental or nervous condition; and because of such condition he might be less likely or unable to have or to hold a specific intent or a certain state of mind, which is an essential ingredient of a certain crime. We have received evidence bearing on the mental and nervous condition of the defendants at the time of the alleged commission of the crime charged. Such evidence may be considered by you in determining whether or not the defendants did any overt acts charged against them and, if so, whether or not, at that time, there existed in them the specific mental factor which, as you have been instructed, must accompany that act to constitute a certain crime. You do not have before you any issue as to defendant's [*sic*] legal sanity."

[9]CALJIC No. 93 which was given: "In this case, you must decide separately the question of the innocence or guilt of each of the [two] defendants. If you cannot agree upon the innocence or guilt of [both] the defendants, but do agree as to the innocence or guilt of one of them, you must render a verdict as to the one upon whose innocence or guilt you do agree."

CALJIC No. 8 which was given: "The court has endeavored to give you instructions embodying all rules of law that may become necessary in guiding you to a just and lawful verdict. The applicability of some of these instructions will depend upon the conclusions you reach as to what the facts are. As to any such instruction, the fact that it has been given must not be taken as indicating an opinion of the court that the instruction will be necessary or as to what the facts are. If an instruction applies only to a state of facts which you find does not exist, you will disregard the instruction."

alerted to the fact that Waldron continued to have mental problems bordering on insanity, would no doubt have been on the lookout for any manifestation of any such symptoms by the petitioner during the proceedings in the trial court. (Cf. *People* v. *Pennington* (1967) 66 Cal.2d 508, 516-519 [58 Cal.Rptr. 374, 426 P.2d 942].) Petitioner's counsel did not complain to the court that he was unable to communicate with his client in order to properly defend him,[10] as did codefendant Waldron's counsel. Neither petitioner nor his codefendant interposed a plea of not guilty by reason of insanity, and nothing pertaining to insanity at time of the offenses or at time of trial was raised in the written motions for new trial.

We have considered the points which petitioner seeks to raise by his Exhibits A and B not only to conserve judicial manpower by eliminating the necessity of some other court or judge going through the trial court files again, but to assess the potential usefulness of the requested reporters' transcripts against the possibilities of an unnecessary drain upon the fisc and the taxpayers.

The federal Courts of Appeal appear to uniformly hold that where a petitioner has failed to avail himself of an appeal and further fails to specify in what respect a reporter's transcript is in fact necessary to rectify an invasion of a fundamental right, his entitlement to a free reporter's transcript has not been made out. One is not entitled to a free reporter's transcript, they hold, merely to "comb the record in hope of discovering some flaw" to raise on collateral review. (*McGarry* v. *Fogliani* (9th Cir. 1966) 370 F.2d 42, 44; accord: *United States* v. *Shoaf, supra,* 341 F.2d 832; *Harless* v. *United States* (5th Cir. 1964) 329 F.2d 397, 398-399; *Culbert* v. *United States* (8th Cir. 1964) 325 F.2d 920, 921-922.)

The fact that under similar circumstances an affluent person could obtain the reporters' transcripts just to satisfy a whimsical fancy does not constitute an invidious discrimination of constitutional dimension. (Cf. *People* v. *Chavez* (1966) *supra,* 243 Cal.App.2d 761, 765-766.)

---

[10] It is true that the clerk's minutes of November 4, 1965, contain an entry: "Out of the presence of the jury counsel for defendant Miller states to the Court that defendant Miller is unable to comprehend the proceedings due to the fact he was not given his medication (Thorazine) and counsel for defendant Miller requests adjournment." From the physical location in the minutes, this appears to have occurred in the late afternoon. Furthermore, the minutes do not indicate that any other evidence was thereafter received that afternoon other than that which concerned a personal complaint of codefendant Waldron as to conditions in which he was held in custody in his jail cell.

## IV.

The order denying the petition for writ of mandamus is affirmed; each party to bear his own costs on appeal, if any.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1970. Sullivan, J., did not participate therein.