UNITED STATES of America ex rel.
Carl BUFORD, Petitioner-Appellant,

v.

Robert J. HENDERSON, Superintendent, Auburn Correctional Facility,
Respondent-Appellee.

No. 65, Docket 75–2052.

United States Court of Appeals,
Second Circuit.

Argued Sept. 3, 1975.

Decided Sept. 25, 1975.

As Amended Oct. 6, 1975.

Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1133.

E. Thomas Boyle, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for petitioner-appellant.

Margery Evans Reifler, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

MANSFIELD, Circuit Judge:

Carl Buford, presently serving a sentence of from 25 years to life at the Auburn Correctional Facility pursuant to his conviction on June 18, 1968, of murder in the second degree after a jury trial in the Rockland County Court, appeals from a denial by the Southern District of New York, Whitman Knapp, *Judge,* of his petition for writ of habeas corpus brought under 28 U.S.C. §§ 2241 and 2254. We affirm.

In 1967 a Rockland County grand jury filed an indictment charging Buford with the murder of one Yvonne Dove, allegedly his paramour. Following a pretrial hearing upon Buford's motion to suppress oral statements given by him to police at the time of his arrest and certain exhibits introduced before the grand jury (shirt, buttons, photographs of defendant's hand and arm, fingernail scrapings removed by the police at the time of his arrest and a State Police laboratory report), Justice John A. Gallucci of the Rockland County Court found in a detailed decision dated April 10, 1968, which recites the circumstances of Buford's arrest, that Buford volunteered certain self-incriminatory statements to the police before his arrest, that he was thereafter lawfully arrested, fully advised of his rights in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that he then knowingly, intelligently and voluntarily waived these rights. The court further found that the physical evidence taken from Buford at the time of his arrest, including the fingernail scrapings, did not violate his constitutional rights, citing *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

In May 1968 a jury trial resulted in Buford's conviction, which was unanimously affirmed by the Appellate Division, *People v. Buford,* 37 A.D.2d 38, 324 N.Y.S.2d 100 (2d Dept. 1971). Leave to appeal to the Court of Appeals was denied on September 28, 1971. Represent-

ed by counsel, petitioner thereafter instituted state habeas corpus and coram nobis proceedings which were pursued through the Appellate Division, where they were denied. For purposes of prosecuting the direct appeal and the post-trial applications for relief, Buford was furnished with a copy of the trial transcript of approximately 3,000 pages.

On March 7, 1974, petitioner, acting *pro se,* filed the present petition in the United States District Court for the Southern District of New York, asserting claims that had been raised in the state courts on his direct appeal and in his post-trial petitions. The federal petition, in somewhat of a blunderbuss-type approach, seeks relief on numerous different grounds which may be summarized as follows:

1. The state trial court improperly admitted incriminatory evidence that either was not connected to Buford or had been taken from him in violation of his Due Process or Equal Protection rights. Petitioner claims that the state improperly introduced fingernail scrapings taken from him before he received *Miranda* warnings, that the state failed to connect the scrapings or other evidence (bits of teeth and hair-like matter) to him or to the deceased, and that the corpus delicti and cause of death were never proven, the evidence of death having been the subject of conflicting and inadmissible expert testimony.

2. The use of circumstantial evidence at the trial to prove disputed facts deprived Buford of his constitutional right to require proof of guilt beyond a reasonable doubt.

3. The *Miranda* warnings were administered by the police to Buford in such a "hasty and lackadaisical" manner that he did not knowingly and intelligently waive his rights, resulting in the improper admission at trial of incriminatory statements and evidence obtained from him in violation of his constitutional rights.

4. The state suppressed evidence favorable to the defense, consisting of

a report of a police sergeant to the effect that a young boy had stated that one "John Sinclair" had committed the crime.[1]

5. The state court improperly refused to strike certain exhibits that were not connected to the defendant, including photographs or descriptions of the scene of the crime.

6. The evidence was insufficient to convict Buford.

7. The appellate court erroneously permitted the state on appeal to substitute replacement for certain exhibits, including substitutes for Polaroid photographs introduced at trial.

In response to a question appearing on a form of the type furnished to habeas corpus petitioners in the Southern District of New York, Buford advised that he did not have "any additional information" relative to the application because he was "without a copy of the trial transcript." With his petition Buford filed a motion pursuant to 28 U.S.C. §§ 2247, 2249,[2] for the production by the Attorney General or by the Rockland County District Attorney of certain records for use by the district court in its hearing on Buford's application, including the state court indictment and the minutes of Buford's arraignment, of the state pretrial hearing, and of the grand jury proceedings, trial and sentencing.

Respondent filed in the district court an affidavit opposing Buford's petition, to which was annexed a copy of the state trial court's decision denying the motion to suppress and the District Attorney's brief on the direct appeal. Thereupon petitioner, after receiving an extension of time to file his traverse, applied pursuant to 28 U.S.C. § 2250[3] for a copy of the state court trial transcript, which was denied by the district court without prejudice to renewal upon a showing of meritorious cause. Buford then filed his traverse and renewed his § 2250 motion, seeking in addition the minutes of the grand jury proceedings and of the pretrial suppression hearing. In the meantime respondent furnished Buford with some 14 pages of the trial transcript, to which reference had been made in the opposition to the petition. Respondent did not turn over to the Clerk for the Southern District of New York or to Buford the copy of the trial minutes which it had subpoenaed from the state court clerk's office.[4] However, during the pendency of this appeal the Attorney General's office loaned a copy of the trial transcript to petitioner's counsel, who had an opportunity to study it before filing his brief.

---

1. The report also stated that a Mrs. McMillan had told the police that she had seen the victim alive but bleeding from a head wound on the afternoon before discovery of the body.

2. "*§ 2247. Documentary evidence*

"On application for a writ of habeas corpus documentary evidence, transcripts of proceedings upon arraignment, plea and sentence and a transcript of the oral testimony introduced on any previous similar application by or in behalf of the same petitioner, shall be admissible in evidence."

"*§ 2249. Certified copies of indictment, plea and judgment; duty of respondent*

"On application for a writ of habeas corpus to inquire into the detention of any person pursuant to a judgment of a court of the United States, the respondent shall promptly file with the court certified copies of the indictment, plea of petitioner and the judgment, or such of them as may be material to the questions raised, if the petitioner fails to attach them to his petition, and same shall be attached to the return to the writ, or to the answer to the order to show cause."

3. "*§ 2250. Indigent petitioner entitled to documents without cost*

"If on any application for a writ of habeas corpus an order has been made permitting the petitioner to prosecute the application in forma pauperis, the clerk of any court of the United States shall furnish to the petitioner without cost certified copies of such documents or parts of the record on file in his office as may be required by order of the judge before whom the application is pending."

4. Respondent's brief (p. 7) states that the transcript was not physically turned over to the district court clerk because of its size and the belief that it would not be needed but that the opposition stated that it would be available on request.

On November 1, 1974, Judge Knapp filed a memorandum decision and order denying the petition on the merits without a hearing. Four of petitioner's claims were dismissed on the ground that they presented evidentiary questions which did not rise to a constitutional level. See *Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *United States ex rel. Terry v. Henderson*, 462 F.2d 1125 (2d Cir. 1972). The claim regarding the taking of fingernail scrapings was dismissed on the ground that under the Supreme Court's decisions in *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); *Schmerber v. California, supra,* and *United States v. Wade, supra,* the police were not required to give *Miranda* warnings and that the state court had in any event made a finding, entitled to a presumption of correctness under 28 U.S.C. § 2254(d),[5] that Buford had been apprised of and had voluntarily and knowingly waived his *Miranda* rights before the scrapings were taken. The police report allegedly suppressed was held not to state a constitutional claim since it may well have been inculpatory rather than exculpatory (Buford having used the alias "St. Clair") and in any event petitioner had been advised at trial of the statement and had had an opportunity to examine the police officer who made the report. Petitioner's claim that the Appellate Division's acceptance of substitute exhibits for use on appeal was improper was denied on the ground that, for the reasons stated in *People v. Buford, supra,* he was not thereby deprived of his right to appeal. From the court's order denying the petition, Buford appeals.

### DISCUSSION

Upon this appeal petitioner's sole contention is that the district court erred in denying his petition without first directing that he be provided with copies of the state trial and suppression hearing transcripts for use in preparing his claims and meeting respondent's opposition. He maintains that to sustain his burden he needs to refer the court to relevant portions of the transcript upon which his claims are based and that denial of these tools amounts to a denial of due process rendering access to the federal court illusory. See *United States ex rel. Williams v. Zelker*, 445 F.2d 451 (2d Cir. 1971); *United States ex rel. Ellington v. Conboy*, 459 F.2d 76 (2d Cir. 1972). Lack of the transcripts in this case, he argues, was particularly crippling because he could not be expected, some six or seven years after the state court suppression hearing and trial, to recall all of the important details of the lengthy proceedings. He further asserts that the state, in contrast, has had the benefit of a copy of the transcript to which it has referred, citing specific pages, in opposition to his claims.

■■ An indigent defendant's right in a criminal case to a free stenographic trial transcript for appellate purposes is now too well settled to require discussion. See *Mayer v. City of Chicago*, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); *Williams v. Oklahoma City*, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969); *Hardy v. United States*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); *Eskerig v. Washington State Board of Prison Terms & Paroles*, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Similarly an indigent petitioner appealing from the denial of his habeas application is entitled to a free copy of the transcript of the lower

---

**5.** "(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—"

court's hearing. *Long v. District Court of Iowa,* 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), see *Gardner v. California,* 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969); *Roberts v. LaVallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). However the question of whether an indigent petitioner is unqualifiedly entitled to a trial transcript for use in a collateral proceeding has been left open by the Supreme Court, *Wade v. Wilson,* 396 U.S. 282, 286, 90 S.Ct. 501, 24 L.Ed.2d 470 (1970). In the absence of a definitive Supreme Court decision on the subject some circuits have required a showing of a particularized or reasonably compelling need, see *Ellis v. Maine,* 448 F.2d 1325, 1327 (1st Cir. 1971); *Jackson v. Turner,* 442 F.2d 1303, 1305 (10th Cir. 1971); *Chavez v. Sigler,* 438 F.2d 890, 894 (8th Cir. 1971); *United States v. Shoaf,* 341 F.2d 832 (4th Cir. 1964), whereas others have imposed no such condition, see, e. g., *MacCollom v. United States,* 511 F.2d 1116 (9th Cir. 1974), *petition for cert. filed,* 43 U.S.L.W. 3664 (Dkt.No.74–1487) (May 27, 1975), also see Comment, The Indigent's Right to a Transcript of Record, 20 Kansas L.Rev. 745, 754–59 (1972).

■ We find it unnecessary to decide in the present case whether the petitioner was entitled to a copy of the trial transcript for the present proceeding without a particularized showing of need, since he has already had one copy which he used for prosecution of his direct state appeal and for later applications to the state courts for collateral relief and upon this appeal his counsel, after being furnished with another copy, has not pointed to anything in the transcript that would support any constitutional claim. The first copy was fur-

nished to Buford pursuant to N.Y.Crim. Proc. § 460.70(1), McKinney's Consol.L., c. 11–A (1971)[6] (formerly N.Y.Code Crim.Proc. § 456(2)) for the purposes of his state appeal. The record reveals that as recently as 1972 Buford quoted from this copy extensively in his state habeas corpus petition and that the denial of this petition continued to be the subject of an appeal pending as late as 1973. Since Buford's federal claims are essentially the same as those asserted by him in the state courts, where he was required to exhaust his remedies before filing his federal petition, his long and diligent use of the copy in the earlier state proceedings appears reasonably sufficient to have enabled him to prepare his later federal claims. Absent his accounting for this first copy—and no showing has been made of an effort to locate it—no basis exists for requiring that a second copy be furnished. But even assuming that Buford had returned this earlier copy to the Attorney General and was entitled to a copy for the purpose of preparing his federal petition, his counsel in the present proceeding, after being furnished with a copy of the trial transcript during the pendency of the present appeal, has not been able to point to any portions of the transcript which would lend additional support to Buford's federal claims or refute respondent's contentions. Under the circumstances we cannot find any denial of Buford's constitutional rights in the failure to provide him with another trial transcript for the purpose of preparing his federal petition. If any federal claims or evidence in support of claims already stated were overlooked, we are confident that his counsel would have directed the relevant portions of the transcript to our attention.

6. "When an appeal is taken by a defendant pursuant to section 450.10, the criminal court in which the judgment, sentence or order being appealed was entered or imposed must, within two days after the filing of the notice of appeal therein, direct the stenographer to make and to file with the court, within twenty days, two transcripts of the stenographic minutes of the proceedings constituting the record on appeal. The ex-

pense of such transcript is a county charge or city charge, as the case may be, payable to the stenographer out of the court fund, or out of the juror's fund or out of any other available fund, upon the certificate of the criminal court. The appellate court may where such is necessary for perfection of the appeal, order that the criminal court furnish one of such transcripts to the defendant or his counsel."

Buford's demand for a transcript of the state court suppression hearing presents a more difficult question. Respondent advises that the suppression hearing minutes were never filed with the Rockland County Clerk and argues that petitioner's request for a transcript should be denied on the ground that since he did not make any application to the state court for any transcripts for use in the present proceeding he has failed to exhaust his state court remedies as required by 28 U.S.C. § 2254. See *United States ex rel. Haines v. Patterson,* 365 F.Supp. 839 (S.D.N.Y.1973). Buford responds that there is no state court procedure available to him for obtaining the transcripts, since the state provides no method of obtaining such a record in the absence of a pending state proceeding, see N.Y.Crim.Proc. § 440.10, McKinney's Consol.L., c. 11–A (1971); see also *United States ex rel. LaNear v. LaVallee,* 306 F.2d 417, 419 (2d Cir. 1962). Petitioner further points to 28 U.S.C. § 2254(e), which provides that where an indigent habeas applicant "challenges the sufficiency of the evidence adduced in such State court proceeding [i. e., a proceeding to which the state and petitioner were parties, in which a hearing on the merits of a factual issue resulted in a determination by the state court judge, evidenced by a written finding or opinion] to support the State court's determination of a factual issue made therein . . . the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official."

■ Buford's present *pro se* petition, however, even when construed liberally in his favor as required by *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), does not challenge the sufficiency of the evidence relied upon by Justice Gallucci to support his findings in denying Buford's motion to suppress. Nor does the present petition claim that Buford was denied a full and fair hearing, that the fact-finding procedure employed by the state court judge was inadequate, or that the suppression proceedings were deficient in some other material respect. Buford's present petition, insofar as it challenges the sufficiency of the evidence in the state court, is directed solely at the conduct of the jury trial itself, and Buford has already had access to a copy of the trial transcript to support his claim that the trial evidence supporting his conviction was so insufficient as to violate his right to due process of law. Buford's petition does not even dispute that Justice Gallucci's findings were supported by substantial evidence introduced at the hearing, including the testimony of Patrolman Krassow that on the night of August 26, 1967, he received an unsolicited telephone call from Buford volunteering certain self-incriminatory information, following which he was arrested, and the testimony of Investigator McElroy to the effect that, before any post-arrest interrogation, he advised Buford that he wanted to question him about an assault on Yvonne Dove, that he then read printed *Miranda* warnings to Buford, that Buford acknowledged that he understood what had been read and then himself read the warnings, that Buford stated that he did not want an attorney, and that no threats, promises or tricks were employed. Apparently aware of this evidence, Buford contends only that the later "*Trial testimony* does not show that defendant understood or waived his rights" (emphasis added). Thus, far from showing that the suppression hearing transcript is at all likely to produce evidence to overturn the findings at the hearings, Buford's petition indicates he seeks to overturn those findings on the basis of trial testimony to which he has already had access.

■ In the absence of a challenge of the sufficiency of the evidence underlying the state judge's findings, which are entitled to a presumption of correctness, 28 U.S.C. § 2254(d), or of some indication that the transcript of the suppression hearing might lead to evidence supporting Buford's claims, he was not entitled under § 2254(e) to a copy of a transcript

of the hearing. Nor do we believe that he was, in the circumstances of this case, entitled to the transcript for the purpose of combing it in the hope that something might turn up, *Hines v. Baker,* 422 F.2d 1002, 1006–07 (10th Cir. 1970); *United States v. Shoaf, supra,* 341 F.2d at 835. To the extent that the petition raises questions of law, the transcript is unnecessary. Even if the transcript revealed, for instance, that fingernail scrapings were taken without prior *Miranda* warnings, this would not violate Buford's constitutional rights. See *Cupp v. Murphy, supra; Schmerber v. California, supra.*

The denial of the petition is affirmed.