■ CHEMICAL BANK, Plaintiff, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Defendant and Third-Party Plaintiff-Respondent. GEORGE HYAM et al., Third-Party Defendants; JOSEPH J. BLAKE AND ASSOCIATES, INC., Third-Party Defendant-Appellant.—Order, Supreme Court, New York County entered June 26, 1979, which denied third-party defendant Blake's motion for summary judgment and to dismiss the fourth cause of action in the third-party complaint, affirmed, with costs and disbursements. We would affirm for the reasons stated at Special Term but we enlarge upon them solely to respond to the issue raised by our dissenting

brother. If it be shown that a real estate appraiser, retained by a property owner to make an appraisal that he knows the owner will use to obtain financing, makes it in a grossly negligent manner so as to inordinately overstate the value, we are not, unlike the dissent, prepared to hold the appraiser exempt from liability to the damaged financing party. If the factual issues here be so resolved, then the principle of law stated in *White v Guarente* (43 NY2d 356), while directed there to an accounting firm, is broad enough in its definition to include this third-party defendant appraiser. Under *White*, if it were known that it was within the contemplation of the appraiser and the owner when they contracted for the appraisal that a financing party would rely upon it and be persuaded by it, then, since those whose conduct was to be so governed would be a "fixed, definable and contemplated group" (p 362), the appraiser would have assumed a duty of care for the benefit of those in the group. Our dissenting brother would reject this standard for "those rules controlling the sale of real property". He points specifically to the rule which precludes an action in fraud by a vendee claiming reliance on a vendor's statement of value *(Fairchild v McMahon,* 139 NY 290). We note, however, that this rule is attended by a number of exceptions (24 NY Jur, Fraud and Deceit, § 76). One of them involves representations made by third persons, about which it has been written, "Where the value of certain property is stated by one who apparently has no object to gain, and no motive or intention to depart from the truth, and who thus throws the representee off his guard, and exposes him to being misled, the speaker is liable in damages for the false statement" (24 NY Jur, Fraud and Deceit, § 77; see, also, 37 CJS, Fraud, § 57). If we were to adopt the rules controlling the sale of real property, the issues raised by this exception would preclude the relief sought by the third-party defendant Blake. Concur—Kupferman, Ross, Markewich and Lynch, JJ.

Murphy, P. J., dissents in a memorandum as follows: Third-party defendant Joseph J. Blake and Associates, Inc. (Blake) moves under CPLR 3211 (subd [a], pars 3, 5, 7) and CPLR 3212 to dismiss the fourth cause of action in the third-party complaint. This memorandum will be limited to a discussion of whether the third-party plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa. (National), has factually shown a meritorious cause of action against Blake (CPLR 3212; *Recckio v Recckio,* 273 App Div 1057; *Goodman v Mutual Broadcasting System,* 16 Misc 2d 858, affd 10 AD2d 632). In exploring the merits of Blake's motion for summary judgment, the record will be viewed most favorably to National. The operative facts may be briefly stated. Third-party defendant Commonwealth Development and Construction Company (Commonwealth) was the owner of a certain tract of land (the property) in Minneapolis, Minnesota. The property was sold at a foreclosure sale in the fall of 1974. In 1975, Commonwealth sought a refinancing arrangement in order to repurchase the property. After extended negotiation, plaintiff Chemical Bank (Chemical) gave Commonwealth a loan of $1,700,000 on July 9, 1975; the loan was repayable after two years. Through this refinancing arrangement, Commonwealth repurchased the property. For a premium of approximately $200,000, National issues a surety bond guaranteeing the payment of that loan. As security, National took a second mortgage of $1,700,000 on the property. National also received indemnification agreements from (i) Commonwealth, (ii) its principal, George Hyam, and (iii) his wife, Dorothy. Suffice it to say that, on July 9, 1977, Commonwealth defaulted upon the loan. In March of 1978, the property was again sold after foreclosure. Chemical has sued National in the action in chief upon the surety bond. National refused to

pay upon the surety bond because Chemical had allegedly misled it as to the true value of the property. National stresses that Chemical had an appraisal indicating that the value of the property was only $525,000. Nonetheless, Chemical informed National that the property was more valuable than the amount of the loan and the surety bond. In the fourth cause of action in the third-party complaint, National sought recovery from Blake for its gross and reckless negligence in appraising the property. At Commonwealth's request, Blake had appraised the property at the fair market value of $2,455,000, as of November 19, 1971. Again, at Commonwealth's request, Blake made an updated report valuing the property at $3,069,000, as of December 7, 1973. In the spring of 1975, Blake's updated appraisal report was given to National Commonwealth; Blake's original report was never turned over to National. Fred Sichel, an attorney formerly employed by National, states that the property was taken as security on the basis of (i) Blake's updated appraisal, (ii) Chemical's representations, and (iii) his own visit to the property. In 1976, Commonwealth commissioned two appraisals. After Commonwealth's default, National received the two reports from its appraisers. The Smith report indicated that the property was worth $300,000; the Sutton report valued the property at $638,000 minus the cost of correcting certain swampy conditions. Both of these appraisers concluded that Blake's updated appraisal was deficient insofar as (i) it stated zoning changes could be easily obtained and (ii) it failed to discuss the swampy soil conditions. National maintains that the updated appraisal was sought by Commonwealth to assist it in obtaining financial relief. Thus, National argues that Blake should be held responsible for its gross negligence because it was foreseeable that National might rely upon that updated appraisal report. National analogizes this situation to one in which a third party, as a member of a limited class, has a right to sue an accounting firm for its negligence. (*White v Guarente,* 43 NY2d 356; *Ultramares Corp. v Touche,* 255 NY 170; Ann. 46 ALR3d 979, Liability of Public Accountant to Third Parties.) Alternatively, National seeks permission to depose Blake in order to discover Commonwealth's purpose in ordering the updated appraisal. Blake, on the other hand, states that it was not foreseeable that the updated appraisal would be used 18 months later by National in placing a second mortgage on this property as security for the surety bond. Blake further contends that the fourth cause should be dismissed since it does not owe any duty to National. Blake also observes that a fourth appraisal, made by Marx for Commonwealth in August of 1975, valued the property at $4,050,000. If this appeal were to be resolved under those principles governing an accountant's liability to third persons, summary judgment must necessarily be denied for the reasons stated by Special Term. However, this dispute should be decided under those rules controlling the sale of real property. The Court of Appeals has stated that: "a false statement by a vendor to a vendee concerning the value of property about to be sold, will not sustain an action for fraud, but the vendee in such cases must rely on his own judgment. (*Ellis v. Andrews,* 56 N. Y. 83.)" (*Fairchild v McMahon,* 139 NY 290, 293-294.) Although the *Ellis* case *(supra)* involves the sale of stock, it sets forth a basic principle to be observed in the sale of real property (56 NY 83, 86): "Upon the question of the value the purchaser must rely upon his own judgment; and it is his folly to rely upon the representation of the vendor in that respect; but in regard to any extrinsic fact affecting the quality or value of the subject of the contract, he may rely upon the assurances of the vendor, and if he does so rely and the assurances are fraudulently made to induce him to make the contract, he may have an action for the injury

sustained." Thus, a vendee has an independent duty to investigate the property under consideration. There is no cause of action for fraud in the sale of real property where the facts represented are not matters peculiarly within the representor's knowledge and the representee had the means available to him of knowing, by the exercise of ordinary intelligence, the truth or real quality of the representation. If the representee does not use those means available to him, he will not be heard to complain that he was induced to enter into the transaction by misrepresentations. (24 NY Jur, Fraud and Deceit, § 176, p 245; *Irvlor Realty Corp. v 62-114 Imlay St. Corp.,* 151 NYS2d 191, 196, affd 7 AD2d 645.) Before issuing the bond, National was in a position similar to that of a prospective vendee of real property. National had the duty to protect itself by ensuring that the value of the real property was sufficient to cover any loss that might be experienced under the bond (cf. *Hartford Acc. & Ind. Co. v Kranz,* 7 AD2d 604, 606). As National now emphasizes, Blake's updated appraisal was commissioned by Commonwealth with the aim of procuring refinancing. National, an experienced firm, could expect Blake or any other appraiser hired by Commonwealth to take an optimistic outlook on all factors affecting the value of the subject property. If Blake had not done so, it is highly improbable that Commonwealth would have volunteered the updated report. With knowledge of this fact, National acted at its own peril in blindly accepting the report of Commonwealth's appraiser. Blake's appraised value should have been examined with the same degree of circumspection as a representation made by Commonwealth as to value. Moreover, National does not maintain that it was misled by any "extrinsic fact" (see *Ellis v Andrews, supra).* Instead, National merely states that it relied to its detriment upon Blake's updated appraisal. National itself was negligent in failing to (i) request Blake's earlier appraisal report and (ii) hire its own appraiser to test the accuracy and reliability of Blake's updated report. Blake had arrived at "fair market value" through the use of comparable sales. These sales were publicly recorded and were available for all to see. Blake's analyses of the comparable sales, whether correct or incorrect, were set forth in its updated appraisal. Therefore, even if Blake had prepared the updated report in a grossly negligent or even fraudulent manner, its errors would have been exposed under the scrutiny of a competent appraiser. While a third party normally does not have an opportunity to check the accuracy of an accountant's report, National had every occasion to conduct an independent examination of Blake's updated report. For the foregoing reasons, National has not probatively established that it has a valid cause of action against Blake upon a theory of either fraud or gross negligence. Without further elaboration, let it merely be noted that the fourth cause of action does not state a meritorious cause of action (CPLR 3211, subd [a], par 7). Accordingly, the order of the Supreme Court, New York County, entered June 26, 1979, denying Blake's motion for accelerated judgment, should be reversed, on the law, and the motion to dismiss the fourth cause of action should be granted under CPLR 3211 (subd [a], par 7) and CPLR 3212.