Robert Saks **MECHIGIAN**, on Behalf of himself and all other investors similarly situated, Plaintiff,

v.

**ART CAPITAL CORP.**, Marigold Enterprises, Inc., American Contemporary Art, Inc., Notar Services Corp., Harris Shapiro, Marilyn Goldberg, Harry Gurwitch, Joseph P. Notaro, Sigmund Rothschild, F. Peter Rose, Joseph Gandolfo and Harry J. Schaare, Defendants.

**84 Civ. 4617 (KTD).**

United States District Court, S.D. New York.

June 25, 1985.

Wayne O. Alpern, New York City, for plaintiff.

Booth, Lipton & Lipton, New York City, for defendants Art Capital Corp. and Harris Shapiro; H. Adam Prussin, New York City, of counsel.

Friedman & Shaftan, P.C., New York City, for defendants American Contemporary Art, Inc., Harry Gurwitch, Sigmund Rothschild and F. Peter Rose; Robert S. Groban, Jr., New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, Robert Saks Mechigian ("Mechigian"), brings this suit against various defendants alleging the following eight causes of action: (1) conspiracy to fraudulently induce investment; (2) violation of state security laws; (3) violation of federal security laws; (4) fraud, misrepresentation, and deceit; (5) innocent misrepresentation; (6) negligence; (7) breach of fiduciary duty; and (8) breach of contract. Defendants, Art Capital Corporation ("ACC") and Harris Shapiro, move to dismiss Counts Two and Three on the ground that, *inter alia*, these causes of action fail to state claims upon which relief can be granted. Defendants, American Contemporary Art, Inc. ("ACA"), Harry Gurwitch, F. Peter Rose, and Sigmund Rothschild, move to dismiss plaintiff's complaint in its entirety. Plaintiff opposes the motions and cross-moves for class action certification.

Plaintiff alleges in pertinent part the following facts in his class action complaint. On June 30, 1978, plaintiff purchased for $137,000 a lithographic plate for "Track Relay," an original artwork by defendant, Harry J. Schaare. Previously, "Track Relay" had been purchased from Schaare for $3,000 by the defendant promoters Shapiro, Marilyn Goldberg, and Gurwitch and their respective corporations, ACC, Marigold Enterprises, Inc., and ACA. These promoters arranged for two art appraisers, defendants Rothschild and Rose, to render their assessments of the fair market value of "Track Relay." At the June 30, 1978 closing, Rothschild and Rose stated that the current fair market value of "Track Relay" was between $165,000 and $175,000. The complaint suggests that the defendants advised the plaintiff that prints could be made from the original and could be sold for a profit. Plaintiff alleges that he was the victim of a deliberate conspiracy by all of the defendants to fraudulently induce him to purchase "Track Relay," whose actual value was in fact substantially less than $137,000. In addition, plaintiff alleges that "numerous other members of the general public constituting the class herein, entered similar transctions [sic] with defendants and purchased similar investments in a similar manner." Class Action Complaint at ¶ 28.

Following the purchase of "Track Relay," plaintiff entrusted entirely to defendants the marketing of the artwork. Plaintiff alleges that other members of the proposed class similarly relied upon the marketing efforts of defendants to produce profits.

## DISCUSSION

### I. MOTIONS TO DISMISS

#### A. *Securities Claims*

Defendants move to dismiss plaintiff's state and federal securities causes of action

on the ground that "Track Relay" is not a security and therefore the securities laws are not implicated. Section 2(1) of the Securities Act of 1933, (the "1933 Act"), 15 U.S.C. § 77b(1), defines a security as, among other things,[1] an investment contract. Plaintiff argues that his purchase of "Track Relay" meets the definition of an "investment contract" and thus constitutes the purchase of a security.

The elements necessary to a finding of an "investment contract" were set forth in *Securities & Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946). The Supreme Court stated that "[a]n investment contract ... means a contract, transaction or scheme whereby a person [1] invests his money [2] in a common enterprise and [3] is led to expect profits solely from the efforts of the promoter or a third party...." Defendants argue that plaintiff's purchase does not constitute an investment contract because (1) it is not an investment in a "common enterprise" and (2) plaintiff was not led to expect his profits solely from the efforts of others. Because I find for the following reasons that plaintiff's purchase does not constitute an investment in a common enterprise, it is unnecessary to reach defendants' second argument.

#### 1. The Approaches

When determining whether an investment has satisfied the "common enterprise" element of the *Howey* test, courts are divided on which of two basic approaches to apply: "horizontal commonality" or "vertical commonality." Courts

which require "horizontal commonality," require plaintiff to show a pooling of the investors' interests in order to establish a "common enterprise." *See Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 682 F.2d 459, 460 (3d Cir.1982); *Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d 216, 222 (6th Cir.1980), *aff'd on other grounds*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96, 100–01 (7th Cir.1977). "Horizontal commonality" clearly does not exist under the present set of facts. Nowhere does plaintiff allege that any of his funds were pooled with other investors' funds. Rather, plaintiff urges that this court adopt the second, more expansive definition of "common enterprise" and hold that "vertical commonality" is sufficient to satisfy this second prong of the *Howey* test. *See Mordaunt v. Incomco*, 686 F.2d 815, 817 (9th Cir.1982), *cert. denied,* —— U.S. ——, 105 S.Ct. 801, 83 L.Ed.2d 793 (1985); *Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 n. 7 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).

There is a split in the courts that have applied the "vertical commonality" approach regarding precisely what is necessary to satisfy this standard. The courts applying the more restrictive definition state that "vertical commonality" exists where "the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or third parties." *Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d at 482 n. 7 (9th Cir.), *cert. denied*, 414 U.S. 821, 94

---

**1.** The 1933 Act defines a security as:

any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, re-

ceipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

The definition of a security in the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78a *et seq.*, is "virtually identical" to the 1933 Act's definition. *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 847 n. 12, 95 S.Ct. 2051, 2058 n. 12, 44 L.Ed.2d 621 (1975). This is also essentially the definition under New York law. *See* N.Y.Gen.Bus.Law § 359–g1(b) (McKinney 1984).

S.Ct. 117, 38 L.Ed.2d 53 (1973). Thus, the Ninth Circuit appears to require merely that there be a "direct relation between the success or failure of the promoter and that of his investors." *Mordaunt v. Incomco,* 686 F.2d at 817 (9th Cir.1982), *cert. denied,* — U.S. ——, 105 S.Ct. 801, 83 L.Ed.2d 793 (1985). However, absent such a direct relation, the Ninth Circuit will not find "vertical commonality." *See Meyer v. Thomas & McKinnon Anchincloss Kohlmeyer, Inc.,* 686 F.2d 818, 819 (9th Cir.1982) (No "vertical commonality" in situations where "the promoter continued to profit through commissions even as the account lost money . . . [and], had the account been successful, the promoter would not necessarily have shared the benefits because [the investor] could elect to withdraw profits as they accrued."), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 495 (1983); *Brodt v. Bache & Co.,* 595 F.2d 459, 461 (9th Cir. 1978) ("Vertical commonality" does not exist where the brokerage house for a discretionary commodities trading account "could reap large commissions for itself and be characterized as successful, while the individual accounts could be wiped out.")

■ A broader definition of "vertical commonality" seems to have been articulated by the Fifth Circuit which has held that "the requisite commonality is evidenced by the fact that the fortunes of all investors are inextricably tied to the efficacy of the [promoter's efforts]." *Securities & Exchange Commission v. Continental Commodities,* 497 F.2d 516, 522 (5th Cir. 1974) (quoting *Securities & Exchange Commission v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 479 (5th Cir.1974)). Thus, rather than requiring a tie between the fortunes of the investors and the *fortunes* of the promoters, as is necessitated under the restrictive definition of "vertical commonality," the broader definition merely requires a link between the fortunes of the investors and the *efforts* of the promoters. Judge Robert J. Ward of this court has noted that the application of this broader definition of "vertical commonality" essentially eliminates the "common enterprise" prong of the *Howey* test because the

only inquiry required is whether the success or failure of the investment is dependent upon the promoter's efforts—i.e. the third prong of the *Howey* test. *Savino v. E.F. Hutton & Co., Inc.,* 507 F.Supp. 1225, 1237–38 n. 11 (S.D.N.Y.1981). Because, as a practical matter, the broad definition of "vertical commonality" renders the second element of the *Howey* test meaningless, I must reject it as untenable. I fully concur with Judge Ward's observation that "[a]ssuming that the courts have been correct in fastening on *Howey's* 'common enterprise' language as an independent component in the test for the existence of an investment contract, the Court has little doubt that the broad version of vertical commonality is inconsistent with *Howey.*" *Id.*

#### 2. The Second Circuit

Although plaintiff asserts that "[i]t is well settled in the Second Circuit that vertical commonality alone is sufficient to create a common enterprise," Plaintiff's Memorandum Of Law In Opposition To Motions To Dismiss ("Plaintiff's Memorandum") at 17, he is unable to cite a single Second Circuit opinion in support of this proposition. Moreover, the cases which have addressed this issue in the Southern District are divided on whether "horizontal commonality" or "vertical commonality" is required, compare *Darrell v. Goodson* [1979–80] Fed.Sec.L.Rep. (CCH) ¶ 97,349 at 97,325 (S.D.N.Y.1980) ("horizontal commonality" or a "pooling of the monies of various investors . . . [is] necessary to the existence of a 'common enterprise.' ") with *Savino v. E.F. Hutton & Co., Inc.,* 507 F.Supp. at 1238 ("a 'common enterprise' should be found to exist within the meaning of *Howey* where there is vertical commonality . . ."); additionally, those courts which have approved of the "vertical commonality" approach are split as to whether the narrow or broad definition should be applied, *compare Savino v. E.F. Hutton & Co., Inc.,* 507 F.Supp. at 1238 n. 11 ("the Court has little doubt that the broad version of vertical commonality is inconsistent

with *Howey*") *with Troyer v. Karcagi*, 476 F.Supp. 1142, 1147–48 (S.D.N.Y.1979) (discretionary securities trading accounts which satisfied only the broad definition of vertical commonality held "sufficient to satisfy the common enterprise component of the *Howey* test.")

### 3. Plaintiff's Purchase

■ Although plaintiff does not argue that his purchase satisfies the "horizontal commonality" test, he does apparently take the position that he meets the requirements of the narrow version of "vertical commonality." Without passing on the issue of whether the narrow definition of "vertical commonality" is sufficient to meet the "common enterprise" prong of the *Howey* test, or whether "horizontal commonality" is required, I find that plaintiff's purchase does not satisfy the narrow definition of "vertical commonality" and can only possibly satisfy the broad definition of "vertical commonality." Because I reject this broad definition of "vertical commonality," I conclude that plaintiff's purchase of "Track Relay" did not constitute the purchase of a security.

With respect to the narrow version of "vertical commonality," plaintiff alleges that "[t]he utilization of non-recourse financing based upon an artificially inflated purchase price created a commonality of interest between buyer and seller in the actual success of the venture." Plaintiff's Memorandum at 17. However, I am simply unpersuaded by plaintiff's reasoning that mere payment through a non-recourse note should be sufficient to catapult an ordinary purchase of art into the purchase of a security with all the concomitant ramifications of such a purchase.

Plaintiff argues that payment on this type of note "amounts to profit-sharing." *Id.* at 18. However, none of the cases cited by plaintiff held that a common enterprise existed because the plaintiff executed a non-recourse note. In fact, in the only Second Circuit case cited by plaintiff, the "common enterprise" issue was not even presented to the court. *See Securities and*

*Exchange Commission v. Aqua-Sonic Products Corp.*, 524 F.Supp. 866, 877 (S.D. N.Y.1981), *aff'd*, 687 F.2d 577 (2d Cir.), *cert. denied*, 459 U.S. 1086, 103 S.Ct. 568, 74 L.Ed.2d 931 (1982).

Plaintiff contends that because "the purchase price was artificially inflated over the actual value for tax purposes, and the long-term note did not reflect true economic value or consideration, payments thereon constitute actual profit to the seller, rather than a mere repayment of consideration." Plaintiff's Memorandum at 19. Plaintiff asserts that "the promoters created the false illusion of a 'pay-back' of the investment, but which in substance amounts to a sharing of profits." *Id.* His reasoning logically implies that good bargains will be purchases of artworks and poor bargains will be purchases of securities. I disagree. Assuming, as I must, that plaintiff's assertion that the purchase price was artificially inflated is correct, I conclude that all that plaintiff has is a bad deal possibly resulting from a fraudulent scheme by defendants.

The non-recourse note merely represents the consideration plaintiff owes defendants for the "Track Relay" and does not represent a profit-sharing arrangement simply because plaintiff feels he has been cheated. In addition, the narrow definition of "vertical commonality" requires plaintiff to show not only that the defendants' and his fortunes rise together, but also that their fortunes will fall together. *See Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. at 1237 (narrow theory of "vertical commonality" requires "that the investment manager's fortunes rise and *fall* with those of the investor." (citation omitted) (emphasis supplied)). Plaintiff does not contend that defendants' fortunes will fall with his; apparently, defendants could do no worse than maintain their position after the purchase.

Thus, at best, plaintiff may only be able to satisfy the broad definition of "vertical commonality" espoused by the Fifth Circuit which merely requires the fortunes of the investor to be inextricably tied to the promoter's efforts. Given that I reject this

broad version of "vertical commonality," plaintiff cannot be considered the purchaser of a security.

In sum, as plaintiff has not met either the "horizontal commonality" test or the narrow definition of "vertical commonality," he has not satisfied the "common enterprise" prong of the *Howey* test for investment contracts. Accordingly, plaintiff's purchase of the "Track Relay" did not constitute the purchase of a security and therefore his second and third causes of action for state and federal securities laws violations are dismissed.[2]

The expansion of the scope of the securities laws sought by the plaintiff herein seems to me to be unwarranted and even perhaps detrimental to the common good. In our mercantile economy, we should not try to turn every "thing" which might be purchased and sold into a "security." If we did, every commercial contract would end up being enforced in the Federal Courts in what some plaintiffs and their attorneys would turn into class actions. Clearly this is not what was intended by Congress in passing the Securities laws.

### B. *Conspiracy*

Plaintiff's first cause of action alleges conspiracy to fraudulently induce investment. The law in New York regarding the validity of a civil conspiracy cause of action is as follows:

conspiracy to commit fraud, standing alone, is not actionable and allegations and proof of conspiracy are important only to connect a defendant with the transaction and to charge him with the acts and declarations of his co-conspirators....

*Ippisch v. Moricz-Smith*, 1 Misc.2d 120, 144 N.Y.S.2d 505, 508 (Sup.Ct. Kings County 1955) (citations omitted), *aff'd as modified*, 1 App.Div.2d 968, 150 N.Y.S.2d 419 (2d Dep't 1956); *see also Friedlander v. National Broadcasting Co.*, 39 Misc.2d 612, 241 N.Y.S.2d 477, 481 (Sup.Ct. New York County 1963) (citations omitted), *rev'd on other grounds*, 20 App.Div.2d 701, 246 N.Y.S.2d 889 (1st Dep't 1964) ("There is ... no cause of action as such for civil conspiracy. Allegations of conspiracy serve only to connect defendants with the acts of co-conspirators.").

■ Although plaintiff acknowledges that New York does not recognize an independent tort of civil conspiracy, *see Routsis v. Swanson*, 26 A.D.2d 67, 270 N.Y.S.2d 908, 913 (1st Dep't 1966), he explains that his allegation of a conspiracy "is a pleading device to connect the acts of one defendant with the acts of his co-defendants for joint and several liability." Plaintiff's Memorandum at 11. Under New York law, "whenever it becomes necessary to prove a conspiracy in order to connect the defendant with the fraud, no averment of the conspiracy need be made in the pleadings to entitle it to be proved." *Brackett v. Griswold*, 112 N.Y. 454, 466–67, 20 N.E. 376 (1889).

Thus, plaintiff's cause of action for civil conspiracy is dismissed because New York does not recognize such an independent

---

**2.** Because plaintiff's second and third causes of action are being dismissed for failing to meet the second element of the *Howey* test, I need not address defendants' alternative arguments that plaintiff's purchase did not satisfy the third element of the test and that plaintiff's securities claims are time-barred. I do note, however, that plaintiff's purchase appears to be deficient with respect to the third element of the *Howey* test which requires that plaintiff expect profits solely or primarily from the efforts of others. Unlike the purchasers in *Aqua-Sonic,* the case plaintiff primarily relies on, plaintiff has not alleged nor does it appear that he can allege that he had no realistic alternative to relying on the promoters' efforts for his profits. Indeed, in contrast to the situation in *Aqua-Sonic* where a particular sales agent was recommended to the purchasers and additional economic benefits existed for those who took advantage of the sales agency option, the defendants in this case did not recommend particular distributors in their sales materials and, instead, simply indicated that, if requested, a list of suitable distributors would be provided. Furthermore, plaintiff does not allege in his complaint that defendants ever represented that additional benefits would accrue to plaintiff if he enlisted the defendants to exploit and market the "Track Relay." Thus, this is not the case where the plaintiff's reliance on the promoters "is precisely what the defendants must have expected from their behavior." *Aqua-Sonic,* 687 F.2d at 584.

cause of action. However, plaintiff may, of course, prove a conspiracy existed in order "to connect the acts of one defendant with the acts of his co-defendants."

### C. Fraud

Defendants also move to dismiss plaintiff's fourth and fifth causes of action for fraud, misrepresentation, and deceit, and innocent misrepresentation on the ground that he has not complied with the specificity requirement of Fed.R.Civ.P. 9(b). Rule 9(b) provides in pertinent part: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The extent of plaintiff's allegations of fraud is essentially contained in paragraph 41 of his "Class Action Complaint" wherein he states:

41. Defendants expressly misrepresented to MECHIGIAN, as one member of the class, that among other things:

(a) SCHAARE had prime recognition as an artist, produced artwork that was highly saleable, and had already received popular and commercial acceptance as an artist which made the potential for his market predictable,

(b) the current fair market value of SCHAARE's "TRACK RELAY" was $165,000–$175,000,

(c) because of the acceptability of the subject matter of "TRACK RELAY" and SCHAARE's widespread popularity as an artist, MECHIGIAN could anticipate significant profits from sales of reproductions,

(d) the master plate of "TRACK RELAY" was a valuable capital asset which had substantial economic value independent of any reproductions.

Although there are twelve defendants named in the complaint, plaintiff does not specifically allege the extent or nature of each defendant's involvement in the fraud, but rather simply refers to "defendants" collectively. This is insufficient under Rule 9(b). At the least, plaintiff must allege the following:

(1) the nature of each individual defendant's participation in the fraud, including the facts constituting scienter and an explanation of the defendant's duty toward the plaintiff; (2) whether the defendant is being sued as a primary defendant or as an aider and abettor; and (3) as to allegations on information and belief, a statement of the source of the information and the reasons upon which the belief is founded.

*Goldberg v. Meridor,* 81 F.R.D. 105, 111 (S.D.N.Y.1979) (footnotes omitted).

In addition to failing to detail each defendant's particular participation, plaintiff has also not given the time or place that the misrepresentations were made. In sum, plaintiff has not met the requirements of Rule 9(b). Accordingly, plaintiff's fourth and fifth causes of action are dismissed without prejudice to plaintiff filing a properly pleaded amended complaint within twenty days of the filing of this decision. Such amended complaint should, at the least, include the following:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."

*Todd v. Oppenheimer & Co., Inc., et al.,* 78 F.R.D. 415, 420–21 (S.D.N.Y.1978) (quoting *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1088 (S.D.N.Y. 1977)).

### D. Negligence

Defendants also seek dismissal of plaintiff's negligence cause of action on the ground that defendants did not owe plaintiff a duty of care, a necessary element in any negligence action. *See Donohue v. Copiague Union Free School District,* 64 A.D.2d 29, 407 N.Y.S.2d 874, 877 (2d Dep't 1978), *aff'd,* 47 N.Y.2d 440, 391 N.E.2d 1352, 418 N.Y.S.2d 375, (1979) (elements of

negligence cause of action are: "(1) the defendant owed the plaintiff a cognizable duty of care, (2) the defendant failed to discharge that duty and (3) the plaintiff suffered damage as a proximate result of such failure...."). Defendants do not argue in their papers that the remaining two elements of a negligence action have not been sufficiently pleaded.

Plaintiff alleges the following with respect to the duty of care element of his negligence cause of action:

> Defendants owed MECHIGIAN and each member of the class a duty to use reasonable care to, among other things:
> (a) select a suitable investment,
> (b) fully and adequately disclose all risks and factors associated with the investment,
> (c) not misrepresent or omit any material facts, to comply with applicable laws, regulations and requirements,
> (d) act in accordance with accepted professional appraising standards and procedures,
> (e) know or make reasonable efforts to ascertain material facts relevant to the fair market value and financial prognosis of such investment, and
> (f) base their appraisals, predictions and prognoses upon objective considerations and existing market conditions.

Class Action Complaint at ¶ 51.

■ Although it is unclear from plaintiff's complaint precisely which defendants owed him a duty of care, in his Memorandum of Law, plaintiff's counsel argues that such duty was owed by each defendant. For example, he alleges that, as professional appraisers, defendants Rothschild and Rose had a duty of care imposed by law. He states that:

> [a]n appraiser retained to evaluate property to one which [sic] he knows or is reasonable [sic] foreseen to rely upon it, and makes an appraisal in a grossly negligently [sic] manner so as to inordinately overstate the value is liable in negligence [essentially because of the] independent legal duty [which] is imposed by the professional relationship of trust and confi-

dence between the appraiser and the appraisee, based upon the apparent objectivity, disinterestedness, self-professed expertise and superior knowledge of the appraiser....

Plaintiff's Memorandum at 98. In an analogous case, the First Department of the Appellate Division held:

> If it be shown that a real estate appraiser, retained by a property owner to make an appraisal that he knows the owner will use to obtain financing, makes it in a grossly negligent manner so as to inordinately overstate the value, we are not ... prepared to hold the appraiser exempt from liability to the damaged financing party.

*Chemical Bank v. National Union Fire Insurance Co.*, 74 A.D.2d 786, 425 N.Y. S.2d 818, 819 (1st Dep't 1980). The court explained:

> [if] it was within the contemplation of the appraiser and the owner when they contracted for the appraisal that a financing party would rely upon it and be persuaded by it, then, since those whose conduct was to be so governed would be a "fixed, definable and contemplated group" the appraiser would have assumed a duty of care for the benefit of those in the group.

*Id.* (citation omitted). In the instant matter, the defendant appraisers Rothschild and Rose were apparently retained by certain of the other defendants to provide appraisals of "Track Relay" to plaintiff. Given that it is possible that the appraisers and the other defendants contemplated that plaintiff would rely, at least to some extent, on the appraisals, Rothschild and Rose may have assumed a duty of care as to plaintiff.

■ With respect to the other defendants, plaintiff alleges that "[t]hose promoting and selling an investment to members of the public have a duty to act with reasonable care in making truthful representations." Plaintiff's Memorandum at 102. However, plaintiff provides absolutely no support for this proposition. Moreover,

plaintiff's arguments regarding the duties of brokers in securities transactions are unconvincing and inapplicable to this case as I have already dismissed plaintiff's securities claims. In sum, I am unwilling to create a duty of care where no sound basis for doing so has been provided.

Accordingly, plaintiff's negligence cause of action is dismissed as to all defendants except Rothschild and Rose.

### E. *Fiduciary Duty*

Plaintiff's seventh cause of action alleges defendants breached their fiduciary duty to plaintiff. Defendants move to dismiss this claim on the ground that no fiduciary relationship existed as between defendants and plaintiff.

▪ A fiduciary "relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Penato v. George*, 52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (2d Dep't 1976). This type of relationship exists not only in technical fiduciary situations, but also in more informal settings in which one places his trust in another. *Id.*, 383 N.Y.S.2d at 904–05.

▪ Plaintiff does not contend that his relationship with defendants could be categorized as a traditional or conventional fiduciary relationship. Rather, he argues that the defendants had a fiduciary duty to plaintiff "by virtue of their expertise and superior knowledge, their professional capacity as art dealers, art merchants, appraisers, broker/dealers, advisors and salesmen, their knowledge of plaintiff's ... lack of knowledge and experience regarding art, and the close and confidential relationship of trust and goodwill the defendants nutured." Plaintiff's Memorandum at 108. These allegations are insufficient to support a claim that a fiduciary relationship existed between the parties. Plaintiff has provided no support for the proposition that mere expertise in a matter creates fiduciary responsibilities, which is essentially the sum and substance of his argument. "[A] fiduciary relationship might be found to exist, in appropriate circumstances, between close friends or even where confidence is based upon prior business dealings." *Penato v. George*, 383 N.Y.S.2d at 905 (citations omitted). No such relationship wherein confidence and trust are justifiably present has been alleged by plaintiff. There has been no allegation of past business dealings and I am unwilling to hold that in every case wherein someone with expertise is hired a fiduciary relationship is created. Accordingly, plaintiff's cause of action for breach of a fiduciary duty is dismissed.

### F. *Contract*

▪ Defendants move to dismiss plaintiff's breach of contract cause of action. Plaintiff alleges that defendants breached their contract to:

(a) sell an investment in strict accordance with reasonable and accepted standards, procedures and requirements applicable to such investments,

(b) provide expert and competent investment advice, appraisals and management services in accordance with professional standards and expectations,

(c) provide a good and valuable investment which had a fair market value equal to or greater than the purchase price and a realistic potential for reasonable profits, and

(d) deal competently and fairly in good faith.

Class Action Complaint ¶ 58. Although defendants contend in conclusory fashion that "Mechigian's breach of contract allegations ... contradict the plain language of [the Memorandum and Purchase Agreement]," Memorandum of Law of Defendants ACA, Gurwitch, Rothschild, and Rose in Support of the Motion to Dismiss at 27, they cite to no specific contradictions in support of this allegation.

On a motion to dismiss the complaint, I must "accept as true all material factual allegations of the complaint and construe its terms in favor of the plaintiff." *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 57 (2d Cir. 1984). Because it

does not "appear ... beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted), defendants' motion to dismiss plaintiff's contract claim is denied.

## II. CLASS ACTION CERTIFICATION

 Plaintiff moves pursuant to Fed.R.Civ.P. 23 for an order certifying that this action may proceed as a class action. The proposed class consists "of all former and present investors in the investment plan or plans conducted by defendants...." Class Action Complaint ¶ 10. Alternatively, plaintiff asks that the determination whether to certify the proposed class be postponed until he has been able to engage in discovery on the issue. In order to prevail on his class certification motion, the plaintiff must establish the following six elements: (1) numerosity; (2) commonality of questions; (3) typicality of claims or defenses; (4) adequacy of representation; (5) predominance of common questions; and (6) superiority of class action.[3] Moreover, it is plaintiff's burden to convince the court that the requirements of Rule 23(a) are met. *Greeley v. KLM Royal Dutch Airlines*, 85 F.R.D. 697, 700 (S.D.N.Y.1980) (citation omitted). *See* Fed.R. Civ.P. 23(a); 23(b)(3). Plaintiff is unable to satisfy these six requirements.

 Rule 23(a) provides that the class must be "so numerous that joinder of all members is impracticable." In his affidavit in support of the Class Action Certification motion, plaintiff's attorney, Wayne O. Alpern, Esq., states "plaintiff reasonable [sic] believes he is one of a large number of clearly defined and ascertainable investors across the country who purchased the investment from defendants during the same period on the basis of the same or similar documentation in a substantially similar manner." Alpern Affidavit ¶ 8. However, this assertion that the numerosity requirement is satisfied is based merely on broad speculation and is insufficient to satisfy the numerosity test. Plaintiff's claim is simply premised on the belief that because "[d]efendants [sic] documentation and the pattern of their conduct is clearly addressed to a large number of investors across the country ... [t]he class is so numerous that joinder of all members is impracticable." *Id.* This is hardly sufficient evidence to support a finding that the numerosity requirement has been met. Indeed, even though plaintiff's counsel has submitted well over one hundred pages of memoranda, reply memoranda, and rebuttal memoranda in support of his certification motion alone, he states that "[n]otwithstanding the foregoing request for class certification, however, plaintiff reasonably envisions that the Court may conclude that the above representations, particularly regarding the size of the class, are insufficient to satisfy the requirements of certification at this time." *Id.* ¶ 11.

Aside from it being unlikely that plaintiff would be able to establish numerosity, it is also doubtful that plaintiff could show that there are common questions of law or fact. For example, there exists the possibility that different state laws will have to be applied for different members of the proposed class. *See Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 482 F.2d 880, 883 (5th Cir.1973) ("[T]he geographical

---

**3.** Rule 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the above, the court must also find the following:

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3).

dispersion of the alleged representations would bring into issue various state common law standards. With no single law governing the entire class, common issues of law cannot be shown to warrant Rule 23 treatment."). In addition, plaintiff's claims, which allege certain oral misrepresentations, may indeed be atypical of the claims of the other putative class members.

Plaintiff alternatively argues "that [the certification] determination is in most likelihood premature at this point in the absence of factual discovery establishing the prerequisites for class action status." *Id.* ¶ 13. I disagree. Even if, given time and further discovery, plaintiff were able to establish numerosity, commonality of questions, and typicality of claims or defenses (itself, a dubious proposition), plaintiff would not be able to satisfy the requirements of adequacy of representation, predominance of common questions, and superiority of class action, regardless of any amount of time given for discovery.

I note at the outset that the "requirement of adequate representation must be stringently applied because members of the class are bound unless they affirmatively exercise their option to be excluded, even though they may not be actually aware of the proceedings." *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463–64 (10th Cir.1974). When discussing what is required for one to be considered an adequate class representative, the Second Circuit has stated that "an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood ... that plaintiff has interests antagonistic to those of the remainder of the class." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968) (citations omitted). Courts are also to consider whether the plaintiff has sufficient financial resources to conduct the litigation. *See, e.g., National Auto Brokers Corp. v. General Motors Corp.*, 376 F.Supp. 620, 637 (S.D.N.Y.1974), *aff'd*, 572 F.2d 953 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).

Although plaintiff's counsel has been unquestionably zealous in his prosecution of this matter to date, mere zeal is not sufficient to constitute "adequate representation." Mr. Alpern has provided a summary of his background, *see* Plaintiff's Reply Memorandum at 41 & n. 45; based on this, it is clear that in the limited time he has been an attorney, he has had absolutely no experience as an attorney for a class representative or as a participant in a class action in any respect. Moreover, given his presentation of the case thus far, I have serious doubts that he is qualified to represent the proposed class. Indicative of his inability to act as the attorney for the putative class is the fact that Mr. Alpern failed to move for class certification "[w]ithin sixty (60) days after the filing of [the class action complaint]," as required by Local Civil Rule 4(c). *See Weinberg v. Lear Fan Corp.*, 102 F.R.D. 269, 272 (S.D. N.Y.1984) ("Counsels' inattention to the class certification motion is a factor to be considered on the issue of whether the named plaintiffs will fairly and adequately represent the putative class.").

In addition, it is also apparent that plaintiff's interests are, at least in part, antagonistic to the interests of the rest of the class. For example, plaintiff's position regarding the tax consequences resulting to all members of the proposed class from their purchases of art works from defendants is almost certainly antagonistic to the general position of the class. Plaintiff states the following:

> as a matter of law, no member of the class is *entitled* to those [tax] benefits and, as a matter of fact, each investor either has or is almost certain to lose them ... [a]ny unchallenged tax benefits are clearly temporary and doomed ... [a]ny potential members of the class are kidding themselves if they believe those benefits will be sustained ... [a]ll class

members have a potential tax liability....

Plaintiff's Reply Memorandum at 37.

■ Finally, plaintiff has not provided adequate support for his claim that he is financially capable to function as a class representative. Thus, plaintiff has not presented sufficient evidence to support a determination that he would be an adequate class representative and, in fact, the evidence presented mandates the opposite conclusion.[4]

Accordingly, as plaintiff cannot satisfy the standards set forth in Rule 23, his motion for class certification is denied.

To summarize, plaintiff's securities, conspiracy, and fiduciary duty claims are dismissed in their entirety; plaintiff's fraud, misrepresentation, deceit, and innocent misrepresentation claims are dismissed without prejudice to his filing an amended complaint within twenty (20) days of the filing of this decision; plaintiff's negligence claim is dismissed as to all defendants except Rothschild and Rose; defendants' motion to dismiss plaintiff's contract claim is denied; and, plaintiff's motion for class action certification is denied.

SO ORDERED.

---

**4.** As I have found that plaintiff is not an adequate class representative, I need not address the final two elements needed for certification, predominance of common questions and superiority of class actions. I do note in passing, however, that plaintiff cannot meet these requirements either. Individual issues will predominate the case, including, *inter alia*: (1) what was the price of each class member's particular purchase; (2) what was the actual value of each class member's particular purchase; (3) what oral representations were made to each class member about his artwork; and (4) whether each class member actually relied on any of the alleged misrepresentations. Given the predominance of individual issues such as fraud, reliance, and damages, it is axiomatic that a class action is not the superior method of proceeding in this case.