Kenneth J. NILSSON, 85–A–2225, Franklin McNair, 81–A–3317, Ronnie Dobson, 80–A–242, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Thomas A. COUGHLIN, Commissioner of the New York State Department of Correctional Services, and Robert H. Kuhlman, Superintendent of Sullivan Correctional Facility, personally and in their official capacities, Defendants.

No. 86 Civ. 8494 (RWS).

United States District Court,
S.D. New York.

Oct. 2, 1987.

**1187**

Kenneth J. Nilsson, pro se.

Robert Abrams, Atty. Gen. of the State of N.Y. (Stephen M. Jacoby, Asst. Atty. Gen., of counsel), New York City, for defendants.

## OPINION

SWEET, District Judge.

Defendants Thomas A. Coughlin III ("Coughlin"), Commissioner of the New York State Department of Correctional Services and Robert H. Kuhlmann ("Kuhlmann"), Superintendent of Sullivan Correctional Facility have moved to dismiss the complaint of *pro se* plaintiffs Kenneth J. Nilsson ("Nilsson"), Franklin McNair ("McNair"), and Ronnie Dobson ("Dobson") pursuant to Fed.R.Civ.P. 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The motion was submitted on May 15, 1987. Nilsson has opposed the defendants' application and moved the court in an "Affirmation in Opposition to Defendant's Motion to Dismiss" to certify the action as a class action. In the alternative, plaintiffs have asked the court to appoint counsel if the court finds "that the plaintiff class repre-

sentative cannot adequately represent the plaintiff."

For the reasons set forth below, defendants' motion to dismiss is denied with leave to renew, plaintiff's application for class certification is denied with leave to renew, and plaintiff's application for appointment of counsel is granted.

*Facts*

Plaintiffs Nilsson, McNair and Dobson were all at one time inmates at Sullivan Correction Facility ("Sullivan"), a facility operated by the New York State Department of Correctional Services ("DOCS"). Sullivan is a "maxi-max" (Maximum A Security) facility which houses approximately 500 people. None of the named plaintiffs are currently at Sullivan. At the time that the defendants moved to dismiss, McNair and Dobson had been transferred to Green Haven Correctional Facility and Great Meadow Correctional Facility respectively. Nilsson had been paroled, and at the time of his Affidavit in Opposition was in the custody of the Suffolk County Sheriff's Department at the Suffolk County Correctional Facility.

In a complaint dated September 15, 1986, received by the Pro Se Office of this court on October 10, 1986, and filed with the Clerk on November 5, 1986, plaintiffs filed a class action suit on behalf of the inmates at Sullivan pursuant to 42 U.S.C. § 1983 alleging violation of the plaintiff class's rights under the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

The substance of the allegations in the complaint, all of which must be taken as true for the purposes of a 12(b)(6) application, include the following:

The plumbing at Sullivan is flawed so that when there is a heavy rain the cells are filled with backed-up urine and feces. Aside from the health hazards that exposure to sewage and bodily fluids poses, inmates' property and legal papers are damaged during these floods because the only storage areas in the cells are on the floor.

The conditions for serving food at Sullivan are highly unsanitary. Inmates are

made to use eating implements that have not been properly cleaned, and there are no sanitary safeguards to protect against communicable diseases.

The noise level at Sullivan is so high that it injures inmates both physically and mentally.

Inmates are not supplied with the basic clothing to which they are entitled under law, including underwear and winter coats. In addition, there is often a wait of as much as a month before they are permitted to purchase personal health and hygiene items at the commissary. Inmates are allowed to make telephone calls only at night, which effectively denies them the opportunity to speak with their counsel.

On a routine basis, inmates with chronic medical and dental problems are denied appropriate treatment and monitoring. There is inadequate review of psychiatric services provided to inmates, including the regular review or prescriptions for potentially life threatening psychotropic medications. The defendants exhibit deliberate indifference to the serious medical needs of the inmates.

Inmates at Sullivan are in constant danger of physical attack. Prisoners are often forced to pay money to other prisoners to avoid being raped or otherwise assaulted. Stabbings and other violent attacks are frequent. The common areas, hallways and recreation areas are severely understaffed, contributing to the danger to inmates from other inmates, and when Corrections Officers are present they sometimes actually exacerbate the situation by harassing prisoners.

Part of the violence problem at Sullivan is attributable to staffing procedures. Under their contracts, security staff may bid for job openings at other facilities on the basis of seniority. Because Sullivan is so violent a facility, senior officers "bid out," leaving an extremely high percentage of junior officers and on-the-job trainees. This has the perverse effect of removing experienced guards from the situation in which they are needed most, increasing danger to inmates and the remaining guards alike.

The classification system is so inadequate that inmates in need of mental observation, inmates with medical problems, adults and adolescents are commingled in population, endangering the well-being of all. Because of the lack of security personnel at Sullivan inmates are locked in their cells for excessive periods of time. The lockers at Sullivan are too small to contain all of a prisoner's belongings, leading to theft among the population heightening the tension and potential for violence. Mail and packages are delayed, impeding communication with family and with counsel. The visiting room at Sullivan is insufficient to meet the needs of the inmates visitors and families and visitors are discouraged from bringing the inmates' children to see them. There is a lack of meaningful vocational, educational or recreational programming.

### Pro Se Prisoner Complaints

■ In general, *pro se* complaints are construed liberally for the purpose of Rule 12(b)(6) motions, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam), and when they implicate the vindication of civil rights or civil liberties, they are construed particularly liberally, *see Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334, 1336–37 (S.D. N.Y.) (liberal construction of *pro se* Title VII claim), *dismissed on other grounds,* 18 Empl.Prac.Dec. (CCH) ¶ 8660, at 4610 (1978), *aff'd,* 607 F.2d 995 (2nd Cir.1979); *Morgan v. LaValle,* 526 F.2d 221, 224 (2d Cir.1975) (liberal construction of *pro se* prisoner's rights complaint); *U.S. ex rel. Buford v. Henderson,* 524 F.2d 147 (2d Cir.), *cert. denied,* 424 U.S. 923, 96 S.Ct. 1133, 47 L.Ed.2d 332 (1976) (liberal construction of *pro se* habeas corpus petition). This Circuit has also noted the special problems that *pro se* prisoners face in prosecuting lawsuits, including being dependent on prison law libraries and unable, by dint of their confinement, to take steps that a plaintiff at liberty would be able to. *See Romandette v. Weetabix Co.,* 807 F.2d 309

(2d Cir.1986). For instance, in his papers opposing the defendants' motion to dismiss, plaintiff Nilsson has represented that his research has suffered because he was not allowed sufficient research time at the law library. Consequently, all of the plaintiffs' applications must be viewed through the lens of procedural leniency.

Perhaps more important to this case is that plaintiffs are bringing it *pro se* and have requested counsel for the purposes of aiding them in properly representing their class. The recent case *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir.1986), discusses the criteria which a court should apply in trying to locate an attorney to prosecute civil cases for indigent plaintiffs. Included among the factors listed by the *Hodge* court are the ease with which a plaintiff can conduct his necessary factual investigation, the complexity of the legal issues involved, and whether the appointment of counsel will lead to a quicker and more just result by sharpening the issues and shaping examination. Here, plaintiffs have done a far better job than the average *pro se* plaintiff in shaping the outlines of their complaint. They have described with greater than the normal specificity the factual conditions upon which they base their claim, and have shaped these facts into a sophisticated legal theory based not on any single act but on the totality of conditions at the facility, a claim arguably made even more forceful by pleading the suit as a class action. In doing so, however, the plaintiffs have raised a host of difficult factual and legal issues.

*Applicable Law*

■ Conditions of confinement can constitute cruel and unusual punishment exactly because the conditions that offenders are subjected to are part of the penalty that they pay for their crimes. *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). In considering whether these conditions are constitutionally infirm, the court must recognize that "alone or in combination" prison conditions can "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). As Justice Brennan has said, a court is required to examine "the totality of the circumstances," which is to say, "Even if no single condition of confinement would be unconstitutional in itself, 'exposure to the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment.'" *Id.* at 363, 101 S.Ct. at 2407 (Brennan, J., concurring) (quoting *Laaman v. Helgemoe*, 437 F.Supp. 269, 322–23 (D.N. H.1977)); *see also Mitchell v. Cuomo*, 748 F.2d 804, 806–07 (2d Cir.1984) ("cumulative impact of conditions of incarceration"); *Lareau v. Manson*, 651 F.2d 96, 107 (2d Cir. 1981) ("It is the totality which the Constitution regulates.").

The nature of the inquiry demanded in a "totality of the conditions" action is complicated. The factual issues are difficult and intertwined, *see, e.g., Ruiz v. Estelle*, 679 F.2d 1115, 1127 (5th Cir.1982) (349 witnesses presented and 1,565 exhibits received in evidence), and the constitutional issues particularly delicate. While the Eighth Amendment reflects "the evolving standards of decency that mark the progress of a maturing society" it cannot appear to be merely the subjective view of judges. *Rhodes*, 452 U.S. at 346, 101 S.Ct. at 2399. "Conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offense against society," *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399, and only when they dip below the evolving Eighth Amendment minima should—and must—a court intervene.

In addition to the alleged extortion and assaults,[1] which when endemic might them-

---

1. When addressing the role of the alleged assaults in a totality of conditions case, it bears on the analysis that even in a straightforward § 1983 case, "liability may be based on the grossly negligent or deliberately indifferent failure of custodial officers to protect an inmate from violence by other prison residents...." *Villante v. Dept. of Corrections*, 786 F.2d 516 (2d

Cir.1986). Such a § 1983 suit may not be predicated on a merely negligent deprivation of life, liberty or property, *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), but the *Davidson* court left open the question of whether recklessness or gross negligence makes out a cause, *Lunde v. Oldi*, 808 F.2d 219, 221 n.

selves form a strong basis for an unconstitutional conditions action,[2] plaintiffs here have alleged raw sewage in the cells, unsanitary dining facilities, a constant level of noise that is physically harmful, a lack of meaningful vocational, educational or recreational programs, and a host of other conditions, some of which have been explicitly considered by courts as a part of a totality. *See Rhodes*, 452 U.S. at 364, 101 S.Ct. at 2408 (living space, noise levels, recreation space, food preparation, medical facilities, protection from violent, deranged, or diseased inmates, clothing, nutrition, bedding, visitation time, recreation, educational and rehabilitative programming, staffing, etc.). A fair inference that may be drawn from this *pro se* complaint, construing it liberally as the court must, is that the defendants were grossly negligent in supervising (or, alternatively, in promulgating policies) that caused unconstitutional conditions.

Defendants have argued that the claim should nonetheless be dismissed because the plaintiffs have no standing, either in their own right or as representatives of the class. A prisoner, like any other plaintiff, "must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights" and has no inherent standing to sue on behalf of his fellow prisoners. *Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981). With respect to the named plaintiffs' action on their own behalf, the defendants' reliance on *Weaver* is misplaced. As in this case, the *Weaver* plaintiff was no longer incarcerated at the facility that he was suing, but unlike this case, the *Weaver* plaintiff sought no damages for the deprivation of his rights while incarcerated, only injunctive and declaratory relief. *Id.* at 27. In contrast, plaintiffs here have demanded both injunctive relief and damages. In the sphere of constitutional rights, a plaintiff need not show *actual* damages to state an actionable claim. The deprivation of a constitutional right, even without proof of actual injury, is actionable for *nominal* damages. *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978); *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 2544 n. 11, 91 L.Ed.2d 249 (1986) ("nominal damages ... are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."). As the Supreme Court has held:

> Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed....

*Piphus*, 435 U.S. at 266, 98 S.Ct. at 1053–54.

Construing the *pro se* complaint liberally and drawing all permissible inferences in their favor, the named plaintiffs have alleged facts which, if true, would constitute an unconstitutional totality of conditions, which would entitle them to nominal damages, even without identifying specific actual injuries. They thus have standing to prosecute the action on their own behalf.

■ The issue of the plaintiffs' standing to seek injunctive relief is linked to whether this action may be prosecuted as a class action. It is possible that this case falls within the exception to general principles of mootness of being capable of repetition, yet evading review. *See Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In particular, two of the named plaintiffs have been transferred to other facilities, and if an inmate transfer always moots a suit then it would be constantly in the power of the defendants to evade review. Consequently, it may be that this case would fall within this Circuit's excep-

---

4 (2d Cir.1986), and thus the *Villante* rule is still the law of this Circuit.

**2.** "Perhaps the worst of all was the 'rampant violence' within the prison. Weaker inmates were 'repeatedly victimized' by the stronger;

robbery, rape, extortion, theft, and assault were 'everyday occurrences among the general inmate population.' " *Rhodes*, 452 U.S. at 355, 101 S.Ct. at 2404 (citations omitted) (Brennan, J., concurring).

tion to the rule that a litigant must be a member of the class that he seeks to represent at the time the class is certified. *See Zurak v. Regan*, 550 F.2d 86 (2d Cir.) (short period of incarceration and possibility of conditional release puts named inmate plaintiffs within exception), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977).

However, at this juncture, plaintiffs do not appear able to meet the requirements of Fed.R.Civ.P. 23(a)(4) that they will be able to protect the interests of the class fairly and adequately. Without qualified counsel, *see Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir.1968) ("an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation."), and absent any showing of the financial capacity to conduct the litigation, *see Mechigian v. Art Capital Corp.*, 612 F.Supp. 1421, 1433 (S.D.N.Y.1985), it would not be responsible to require the defendants to litigate a class action suit in which plaintiffs' legal representation—now nonexistent—is so poor that the judgment might not have any res judicata effect, *Dolgow v. Anderson*, 43 F.R.D. 472, 496 (E.D.N.Y.1968) (Weinstein, J.). Consequently, the application for class certification is denied with leave to renew, as is the motion to dismiss the prayer for injunctive relief for lack of standing.

In all, these are difficult factual and legal issues, bound closely to the individual circumstances of this case, with respect not only to the underlying merits but also to the circumstances surrounding the issue of certification and standing. The plaintiffs' claim appears to have the degree of merit necessary to warrant appointment of counsel. *Hodge*, 802 F.2d at 60 (claims may not be "so highly dubious that a judge cannot properly ask a member of the bar to assume ... thankless burden"). The defendants' motion to dismiss is denied with leave to renew, plaintiffs' application for class certification is denied with leave to renew, and plaintiff's application for appointment of counsel is granted. The *pro se* office is directed to seek appointment of appropriate counsel.

IT IS SO ORDERED.